## Jehiel H. Montgomery v. Jane A. Merrill.

*Bank charter: Forfeiture: Repeal: Collateral proceedings.* Plaintiff obtained a sheriff's deed on sale of certain real estate, under a judgment against the Calhoun County Bank in 1859, and which became operative in 1860.

A Receiver was appointed for the Bank, under the act "to provide for proceedings in Chancery against corporations," in June, 1844, *ex parte* and before hearing. After qualifying, no proceedings were taken by him, and no assignment was made to him, and he died in 1851; and no further steps were taken in the suit in which he acted by any one, and no claims were presented against the bank.

MONTGOMERY *v.* MERRILL.

In 1842 a law had been passed to repeal the charter of said bank, with others, providing, however, for an exemption in case of compliance with certain provisions. The charter of the bank expired in 1857, and all rights of action in reference to it under the statute — *Comp. L.* § 701 — became barred, more than three months before the plaintiff's deed became operative.

*Held,* That the said law of 1842 did not repeal the charter so that a forfeiture could be ascertained without judicial sentence, and that therefore the title to land could not be absolutely divested from the bank before a hearing of the proceeding to determine the fact of forfeiture.

Much less could the fact be determined in a collateral proceeding.

*Ejectment: Receivership: Execution-title.* In an action of ejectment to recover said premises under the execution title : *Held,* that while a decree of forfeiture if granted, might have related back to the beginning of the receivership, yet without such adjudication, the receiver's title. to the bank's assets remained conditional and inchoate, and amounted to but a possessory right for the purposes of the suit. The legal title therefore to said land never vested in the receiver, and it was subject to levy and sale.

Whatever may be the effect of a temporary receivership in creating priorities, or as regards possession, the statute authorizing lands to be sold on execution, is inconsistent with the idea that as against the debtor himself such a levy would not be good when he has made no assignment to the receiver. When the right of a receiver terminates, and he has made no sale or other legal disposition of the land, the execution-title will stand as if there had been no receivership.

*Enforcement of legal rights : Reasonable time: Laches.* Under a statute designed to produce a speedy determination of all matters involved, the law will not allow a creditor to wait indefinitely without applying to the court within some reasonable time to compel a suit to proceed. And when the rights of creditors have become barred, such a receivership ceases to be operative for any purpose.

Every trust in land ceases as soon as the purposes cease for which it is created. — *2 C. L.* § 2653.

*Heard April 28. Decided May 4.*

Error to Calhoun Circuit.

This was an action of ejectment, brought to recover the possession of certain premises situated in the city of Marshall.

The plaintiff claimed, by virtue of a sheriff's deed, based upon a judgment recovered against the Calhoun County Bank.

The defendant relied upon an alleged outstanding title of the receiver of the bank.

Judgment was rendered in favor of defendant.

The facts are stated in the opinion.

*S. T. Douglass,* and *George Woodruff,* for plaintiff in error.

The plaintiff claims under a sheriff's deed. The defendant shows no title in himself, but relies for a defense in the outstanding title of the receiver.

1. An outstanding title in a third person to be a good defense in ejectment, must be a valid and subsisting title — one upon which a recovery might be had in ejectment, — *Macdonald v. Scheider, 27 Mis. 405; Moreau v. Dechemendy, 18 Id. 522; Dicloinson v. Collins, 1 Swan. 516; Hunter v. Cochran, 3 Barr. 105; Jackson v. Hudson, 3 Johns. 388; Salter v. Williams, 10 Geo. 186.*

2. It is doubtful whether any title to the premises was ever vested in the receiver. No assignment was executed to him; and although the act of 1837 declared that the receiver, when appointed, should be vested, as trustee, with all real and personal estate of the bank ( L. 1837, p. 307, § 5 ), yet a subsequent statute, which was in force when the receiver was appointed, required that all trusts, excepting such as might arise or result by implication of law, should be created by instrument in writing. ( R. S. 1838, p. 261, § 27. )

3. But the title, if any, which was vested in the receiver, was that of a mere trustee for the purpose of converting the property into money, and paying the debts of the bank and dividing the surplus, if any, among its shareholders, in case it should be proved that the bank was insolvent or had violated any of the provisions of its charter, and was therefore decreed dissolved. And the suit against the bank must be held to have become dormant by failure to prosecute it with reasonable diligence, and the trust in the receiver to have come to an end. All claims against the bank, except the plaintiff's, even judgments not revived, had become barred by the statute of limitation before our levy was made.

4. The receiver's title, if any he had, had been extinguished at the time of the trial of this cause, in 1863, by the adverse possession of the lessor of the defendants for more than twenty years. Hence it was not, at that time, a

valid and subsisting title.—*Jackson v. Hudson, 3 Johns. 386.*

5. There was nothing in the pendency of the suit of the Attorney General against the bank to prevent the plaintiff from prosecuting his suit against the bank. — *Willard Eq. Jur. 790.*

*Wm. H. Brown,* for defendant in error.

The title, if the bank had any, vested in the receiver duly appointed by the Chancellor. — *Laws of 1837, p. 306, § 5.*

Such receiver shall thereupon be vested as trustee, with all the real and personal estate.— *Walk. Ch. 90; 23 Maine, 318; 13 Ohio, 298.*

A defunct corporation cannot ˉbe sued. There is no party to come before the court. The trustee or receiver is the only person who can be brought before the court. — *13 Ohio, 298–9; Act of 1836, L. of '36, p. 224, § 15, p. 226, § 23, 24; 1 Comp. L. p. 701.*

The receiver's title had not expired. The suit by *Ketchum,* the receiver, v. *James M. Parsons,* commenced in May, 1845, adjourned from time to time until April, 1848, last adjournment. It had not abated. — *R. S. 1838, p. 475, § 32; Id. p. 527, § 1; Burr. Pr. 282; 10 Wend. 540; 1 Denio, 53; 2 Comp. Laws, 1307, § 4908, 4909.*

The suit was not abated by death or removal.

The receiver takes under the law, and not under the corporation.— *Edwards v. Receiver, 166; 1 Seld. 320.*

CAMPBELL J.

Plaintiff having obtained a judgment in 1840, against the Calhoun County Bank, sued it over and obtained a second judgment thereon, in November, 1858, upon which he took out execution, on which the premises in controversy in this suit were sold March 19, 1859. The re-

demption having run out, plaintiff's deed became operative in due course of law in June, 1860. On this he brought ejectment, and defendant, not having shown a valid title of her own, set up in defense an outstanding title under a receivership, the history of which shows that on the 14th day of February, 1844, the Attorney General filed a bill against the bank, under the act of June 21, 1837, to "provide for proceedings in chancery against corporations, and for other purposes." On this bill an injunction issued at its date, and on the 5th of March, an order for appointing a receiver was made, and on June 4th, upon the coming in of the master's report, George Ketchum was appointed receiver and qualified. No further steps were ever taken in the case, and the receiver died in 1851. During his life time he had commenced an action of ejectment for this land against defendant's lessor, which never came to trial.

In order to understand the points presented, it will be necessary to refer briefly to some statutes bearing upon the legal rights of the several parties.

The Calhoun County Bank was chartered in 1836, and was to continue in existence until March 1, 1857, but subject to repeal by a two-thirds vote of the legislature. On February 16, 1842, an act was passed to repeal the charters of several banks therein named, including the Calhoun County Bank, but providing by a subsequent section, that this and three other banks named should be exempt from its provisions, if they should comply with the act to repeal the suspension act, and should continue to do a legitimate banking business. The same statute authorized any creditor to apply to the chancellor for a receiver, and provided that the receivers should proceed in like manner, and have the same powers with receivers appointed under another statute relating to certain other banks, and passed the day before. *L. 1842, 56, 61, 62.* Those powers were substantially the same conferred by the general acts, which gave receivers the

same authority with trustees of insolvents, and vested in them the estate real and personal.—*L. 1839, p. 96.*

It is claimed by the defense that this corporation became defunct, and that the title to all the realty vested absolutely and in fee in the receiver.

It cannot be seriously contended that the act of 1842 repealed the charter so that a forfeiture could be ascertained without a judicial sentence. The bill filed in 1844, on behalf of the state, assumes the bank to be still existing, and prays forfeiture for cause. Apart from such a recognition, it would be contrary to legal principles to leave such a question open to be determined collaterally.

The receiver, being appointed *ex parte*, and before a decree of forfeiture, can only be regarded as holding provisionally. It would not be competent for legislative authority to divest a title absolutely before a hearing, for until that time it could not be known whether there was any forfeiture, and, therefore, nothing could be established justifying complaint against the bank. A decree of forfeiture might very well justify the relating back of the title to the beginning of the receivership; but, on the other hand, this title, until adjudication, must be conditional and inchoate, and amount to no more than a possessory right for the purposes of the suit.

It must follow, upon similar principles, that the receiver's right, being purely for the purposes of the suit, could not outlast the suit, nor be used for any purposes not justified thereby. It is a statutory, as well as elementary principle, that every trust in land ceases as soon as the purposes cease for which it is created. — *2 C. L. § 2653.*

The purposes for which receivers were appointed were, first, to pay creditors; and second, to pay any balance not needed for that object, to the stockholders. *L. 1839. 98, 99.* But if the corporation was not dissolved, then of course, neither of these purposes could be carried out.

The law directed receivers, immediately upon their ap-

pointment, to give notice requiring creditors to appear within forty days after the first publication of notice. *L. 1839, p. 97; R. S. of 1838, p. 608.* It contemplated that a first dividend would be made within a year, and a second, if there should be assets, within eighteen months, and that whenever, at the time of making a dividend, there should not have been debts enough proved to absorb the assets, the surplus should be given to the stockholders. *L. 1839, p. 99; L. 1841, p. 42–3.* By the general laws of the state it was then, and has since been provided, that suits must be commenced within three years after a corporation expires, if not previously outlawed.— *R. S. 1838, 229; 1 C. L. 701*

It can hardly be supposed that, under a statute designed to produce a speedy determination of all matters involved, a creditor could be allowed to wait indefinitely without applying to the court within some reasonable time to compel the suit to proceed. But it is unnecessary for us to determine how much diligence would be required; for certainly no one could apply when his cause of action was absolutely barred. *Godfrey's Estate, 4 Mich. R. 308.* As the charter of the bank expired March 1, 1857, the right of action in every case became barred March 1, 1860, which was more than three months before plaintiff's deed became operative. As the legal estate had never vested in the receiver, the land was subject to levy and sale. Whatever may be the effect of a temporary receivership in creating priorities, or in regard to possession, we think the statute authorizing lands to be sold on execution, is inconsistent with the idea that, as against the debtor himself, such a levy would not be good when he has made no assignment to the receiver. And when the right of the receiver terminates, and he has made no sale, or other legal disposition of the land, the execution title will stand as if there had never been a receivership.

When the title of plaintiff became complete, the purposes of the receivership had ceased for some months, if not for many years. The chancery suit had ceased to be capable

of revival, and must be regarded as abated by the incapacity of any one to further complain of the extinct corporation — the expiration of the charter alone not necessarily leading to this result, but there being no one who could claim to interpose to enforce prosecution.

We think the plaintiff was entitled to have his deed sustained as unaffected by the receivership, and that the ruling which held it invalid, was erroneous.

The remaining question becomes immaterial. The judgment must be reversed, with costs, and a new trial granted.

The other Justices concurred.