THE CHICAGO FIRE PROOFING COMPANY *et al.*

*v.*

THE PARK NATIONAL BANK.

*Filed at Ottawa, November 27, 1892.*

1. PARTIES—*suit on a note in the hands of a receiver.* After the appointment of a receiver for an insolvent national bank, the receiver may maintain an action on a note payable to the bank, either in the name of the bank or in his own name, as he may elect, or an action may be brought in the name of the bank for the use of the receiver.

2. USURY—*commissions for procuring a loan.* The fact that the president of a bank enters into an agreement in his individual capacity, by which he is to secure a commission above the legal rate of interest, on a loan by his bank, when the bank has nothing to do with the agreement and receives no part of the money so paid by the borrower as commissions, will not establish usury on the part of the bank.

31—145 ILL.

3. Judgment by Confession—*motion to vacate—affidavits construed —of their sufficiency.* On an application of a defendant to vacate a judgment by confession, and for leave to plead to the action, affidavits filed in support of the motion are to be construed most strongly against him. It is not sufficient to state facts, from which, if proved on a trial, a defense may be inferred.

Appeal from the Appellate Court for the First District; —heard in that court on appeal from the Circuit Court of Cook County; the Hon. S. P. McConnell, Judge, presiding.

Messrs. Hoyne, Follansbee & O'Conner, for the appellants:

As to what is usury, and remedy for. See *Farmers' Nat. Bank* v. *Deering,* 91 U. S. 29; *Driesback* v. *Nat. Bank,* 104 id. 52; *Barnett* v. *Nat. Bank,* 98 id. 555; *Nat. Bank* v. *Dusham,* 96 Pa. St. 340; *Ellis* v. *First Nat. Bank,* 11 Bradw. 276; *Nat. Bank of Auburn* v. *Lewis,* 81 N. Y. 15; *First Nat. Bank* v. *Davis,* 108 Ill. 633; *Saylor* v. *Daniels,* 37 id. 331; *Mitchell* v. *Lyman,* 77 id. 525; *Moniteau Bank* v. *Miller,* 77 Mo. 187.

The action should have been brought in the name of the receiver. *Bank of Bethel* v. *Pahquioque Bank,* 14 Wall. 383; *Kennedy* v. *Wilson,* 8 id. 506.

Messrs. Aldrich, Payne & Defrees, for the appellee:

The affirmance of the judgment by the Appellate Court settles every question of fact against the appellants. *Powell* v. *McCord,* 121 Ill. 330; *Alphin* v. *Working,* 132 id. 488; *Leonard* v. *Patton,* 106 id. 99.

Even if the appellants paid usurious interest, there is no evidence that it was included in and became a part of the notes in these cases. Consequently it would not constitute a defense to the suits, but would simply enable the appellant to maintain an independent action for the statutory penalty. *Bank* v. *Deering,* 91 U. S. 29; *Barnet* v. *Bank,* 98 id. 558; *Driesback* v. *Bank,* 104 id. 52; *Walsh* v.

*Mayer,* 111 id. 31; *Stevens* v. *Bank,* 111 id. 199; Nat'l Banking Act, sec. 76 (5,198).

The receiver had the right to sue in the name of the bank. *Kennedy* v. *Gibson,* 8 Wall. 506; *Bank of Bethel.* v. *Pahquioque Bank,* 14 id. 383; *Nat. Bank* v. *Kennedy,* 17 id. 19.

The appointment of a receiver did not dissolve the corporation; it still had capacity to sue and be sued. *Bank of Bethel* v. *Pahquioque Bank,* 14 Wall. 383; *Rosenblatt* v. *Johnson,* 104 U. S. 462.

The defendants have no interest in knowing who is the equitable or beneficial owner of the notes. *Newton* v. *Turner,* 5 La. 46; *Elliott* v. *Abbott,* 12 N. H. 549; *Brown* v. *Nourse,* 55 Me. 230; *McConnel* v. *Thomas,* 2 Scam. 313; *Merrill* v. *Randall,* 22 Ill. 233; *Burnap* v. *Cook,* 32 id. 171; *Belohradsky* v. *Kuhn,* 69 id. 549.

Possession of the note is sufficient evidence of property, and the defendant can not raise the question of beneficial ownership. *McHenry* v. *Ridgely,* 2 Scam. 309; *Parks* v. *Brown,* 16 Ill. 454.

The legal title to the notes is in the bank, even though a receiver has been appointed. Rev. Stat. U. S., sec. 5,234; *Bank of Bethel* v. *P. Bank,* 14 Wall. 383.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

The questions relied upon by counsel for the appellants to reverse the judgment of the Apellate Court, as will be found in the first part of their argument, are as follows:

"The errors assigned on the record herein raise two questions:

1.   Did the court err in refusing to allow appellants to plead usury to the notes sued on?

2.   Could the suit be maintained in the name of appellee after the appointment of a receiver, under the provisions of the United States statutes concerning national banks?"

Upon looking into the record, it appears that on the 31st day of August, 1891, a judgment by confession was entered in the Circuit Court of Cook county, in favor of Park National Bank of Chicago, and against The Chicago Fire Proofing Co. and George A. Gindele, the appellants, for the sum of $2,489.05, on a promissory note executed by the appellants on the 21st day of May, 1890, payable to appellee sixty days after the date thereof. On the 10th day of September, 1891, the appellants, against whom the judgment had been entered, appeared and entered a motion to set aside the judgment and for leave to plead. The motion was heard by the court on affidavits presented by the respective parties and denied. The appellants appealed to the Appellate Court, where the judgment of the Circuit Court was affirmed, and to reverse the judgment of the Appellate Court this appeal was taken. The defense interposed to the note, as disclosed by the affidavit of George A. Gindele, heard on the motion, was usury exacted by the bank on three different occasions, when the loan represented by the note in controversy was being renewed. The first usurious transaction set up in the affidavit was substantially as follows: That Charles P. Parker, president of the Park National Bank, while the appellant, the Chicago Fire Proofing Co. was largely indebted to the bank, insisted upon affiant, Geo. A. Gindele, who was president of the Proofing Co., buying from him certain stock in the Hennah Street Railway Co. which was of no value, and for which he required the affiant to pay him the sum of five hundred dollars; but the real consideration for said five hundred dollars was the agreement by the bank to carry the loans made by the corporation and affiant. It is not shown in the affidavit that the bank received the five hundred dollars, nor does it appear that the sum was included in the promissory note upon which judgment was entered. The fair inference from the affidavit would seem to be that the transaction was one between Gindele and Parker, one in which

the bank had no interest. But if there was any doubt in regard to the real character of the transaction, that doubt is removed by the affidavit of Parker, in which he says that he sold the stock to Gindele for $500. That the stock was worth that amount, and Gindele was anxious to purchase it. That the bank had no interest in the stock and received no part of the proceeds. The second usurious transaction relied upon, as disclosed by the affidavit, is substantially as follows: In March, 1889, the defendant company, being indebted to the bank on two promissory notes of $1,300 and $2,000, and requiring an additional sum to enlarge its plant, applied to Parker, president of the bank, for an additional loan of $5,000; that after some negotiations, Parker, as president of the bank, agreed to let affiant and said corporation have said sum of $5,000, if he or they would pay Parker or said bank the sum of $500,—commission for making the loan,—in addition to the interest on the loan. It is then set up in the affidavit that affiant, as president of said defendant corporation, and in his own individual capacity, executed a note bearing date said 13th day of March, 1889, for the sum of $6,800 for which he received credit on his bank book, whereupon he immediately paid said bank the said note of $1,300, interest on said $6,800, for the period of ninety days, at eight per cent per annum, and said commissions amounting to $500 as aforesaid. It is also alleged in the affidavit that the note upon which judgment was entered is a renewal of a part of the $6,800 note. We do not regard the facts set up in this part of the affidavit sufficient to establish the fact that the bank contracted to receive, or did receive, a sum of money as interest in excess of the amount it was authorized by law to charge or receive. Whether the five hundred dollars commission was, under the contract, to be paid to Parker or the bank is left entirely to conjecture. The affidavit alleges that Parker, as president, agreed to make the loan, if he or they (the corporation) would pay Parker or the bank. If

Parker, in his individual capacity, entered into an agreement under which he was to receive a commission for procuring a loan, and the bank had nothing whatever to do with the agreement, and received no part of the money, it could not be charged with usury. It nowhere appears that the bank received any portion of this commission, but on the contrary the affidavit discloses the fact that the corporation received on its bank book credit for the entire sum of $6,800, the full amount of the loan. Had there been nothing but the affidavit before the court, usury was not established, but Parker in his affidavit distinctly states that the five hundred dollar transaction was a personal matter between himself and Gindele, that Gindele paid him the money to procure the purchase of certain stock, that the bank had nothing to do with the transaction and received no benefit from it.

The third ground relied upon to establish usury, as declared by the affidavit, is to the following effect: That Parker, on May 7, 1890, owned stock in defendant company of the par value of $1,000, but the stock had no real value, but was worthless. That Parker insisted that Gindele should purchase the stock for $500, which he did, giving his note therefor. That the real consideration for the note was not the stock, but the note was given to induce Parker to renew certain notes held by the bank against the defendant company. There is nothing in this transaction which can be regarded as usurious. The bank had no interest in the stock sold by Parker, nor did it receive any part of the $500 paid by Gindele, nor was this five hundred dollars included in any of the renewals. The transaction, when properly considered, amounted to nothing more than a sale and transfer of certain stock held by Parker to Gindele, for which the latter gave his promissory note, which he subsequently paid. Neither the bank nor the defendant corporation had anything to do with the transaction, and upon what ground usury can be predicated, it is not apparent.

The second ground relied upon to reverse the judgment is that the judgment should have been entered in the name of the receiver and not in the name of the bank. After the appointment of a receiver, he no doubt had the right to take possession of the assets of the bank and collect the notes and other obligations due the bank. But a note payable to the bank might be sued in the name of the bank, or in the name of the receiver, as he might elect. *Kennedy* v. *Gibson,* 8 Wall. 506; *Bank of Bethel* v. *Pahquioque Bank,* 14 id. 385; *Nat. Bk.* v. *Kennedy,* 17 Wall. 19; Beach on Receivers, secs. 472–477. Or the action might be brought in the name of the bank for the use of the receiver, but the fact that this course was not pursued does not affect the validity of the judgment. Indeed, the notes were filed in the court where judgment was entered, and the notes having been merged in the judgment, it would be a bar to any other action which might be brought upon them, and we perceive no just ground upon which the appellants' can complain, because the judgment was not entered in the name of the receiver. In an application of this character, to vacate a judgment and for leave to plead, affidavits filed in support of the motion are to be construed most strongly against the party making the application. It is not sufficient to state facts from which, if proved on a trial, a defense might be inferred. *Crossman* v. *Wohlleben,* 90 Ill. 537. When the affidavits relied upon in this case are tested by the rule indicated, it is apparent no case was made out by the appellants. The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

CHICAGO FIRE PROOFING CO. v. PARK NATIONAL BANK. Appeal from First District. *Per Curiam*: This case is like the foregoing case of *The Chicago Fire Proofing Co.* v. *The Park Nat. Bank,* and will be controlled by that case. The judgment will be affirmed.