TAYLOR *v.* ADAMS.

MORTGAGES—BANKS—FORECLOSURE—RECEIVERS.
> Under mortgage foreclosure commenced by bank, completed by its receiver and sale had by bank to purchasers after expiration of period for redemption, such purchasers acquired clear title as against junior incumbrancer (3 Comp. Laws 1929, §§ 11959, 11960).

Appeal from Wayne; Dingeman (Harry J.), J. Submitted February 17, 1937. (Docket No. 62, Calendar No. 39,272.) Decided April 22, 1937.

Bill by James R. Taylor, conservator of Romulus State Bank, a Michigan corporation, against Nelson F. Adams, trustee in bankruptcy of the estate of Thomas Olszynski, Stella Olszynski and Anthony

Lachowski to remove cloud on title of land and for other relief. Cross-bill by defendant Adams against defendants Stella Olszynski, Anthony Lachowski and Victoria Olszynski to establish priority of a mortgage lien and for other relief. From decree rendered, defendant and cross-plaintiff Adams appeals. Affirmed.

*Norman M. Snider* and *Isaac Finkelstein,* for plaintiff.

*Arthur J. Adams,* for defendant Adams.

*Harry J. Lippman,* for defendants Olszynski and Lachowski.

Sharpe, J. On June 22, 1926, the Romulus State Bank loaned Stella Olszynski $6,500 and took as security therefor a mortgage on her farm located in Van Buren township, Wayne county, Michigan. The description of the property so mortgaged was not wholly accurate and on about June 17, 1931, a corrected mortgage was obtained and recorded. Prior to March 9, 1931, Nelson F. Adams, trustee in bankruptcy of the estate of Thomas Olszynski, bankrupt and husband of Stella Olszynski, instituted a chancery proceeding against Stella Olszynski to recover property of the bankrupt. On March 9, 1931, a decree was entered in said cause decreeing to Nelson F. Adams, trustee in bankruptcy, a lien in the form of an equitable mortgage in the sum of $3,500 against the above described property. On or about June 29, 1931, the payments on the bank mortgage being in default, foreclosure proceedings were commenced by publication; on October 22, 1931, the property was sold by sheriff's deed to Charles H. Schutz, then receiver for the Romulus

State Bank; and the sheriff's deed was recorded October 24, 1931. The notice of mortgage foreclosure sale was so improvised as to embrace the original and corrected mortgage.

On September 18, 1931, the Romulus State Bank closed its doors. A bill of complaint was subsequently filed in the Wayne county circuit court by the State banking commissioner asking for the appointment of a temporary and permanent receiver; on September 26, 1931, Charles H. Schutz was appointed temporary receiver; and on October 19, 1931, the appointment was made permanent. The notice of the foreclosure sale was published in the name of the Romulus State Bank and continued to run under that name until the date of sale. On October 29, 1932, the bank through its proper officers executed a land contract with Victoria Olszynski, daughter of Stella Olszynski, in the sum of $8,600 with a $1,200 down payment and the balance of $7,400 to be paid in stated periods.

Subsequent to the date of the above contract, the trustee in bankruptcy of the estate of Thomas Olszynski made a claim to the Romulus State Bank that his mortgage was in force and superior to the bank mortgage. As the result of such claim the bank filed a bill in chancery to establish the priority of its mortgage and to remove any cloud arising out of the equitable mortgage of the trustee in bankruptcy. The defendant Nelson F. Adams, as such trustee, filed an answer to the bill of complaint denying the material allegations in said bill and also filed a cross-bill asking that the equitable mortgage be foreclosed. The cause came on to be heard on reference before a circuit court commissioner who made a report recommending that a decree be granted to plaintiff. Objections were filed to this

report, but the report was confirmed by the circuit judge and a decree entered June 2, 1936.

The defendant and cross-plaintiff appeals and contends that the foreclosure of the mortgage of the Romulus State Bank was not valid and regular because during the publication of the notice of foreclosure sale under the statute, there was a legal transfer of the mortgagee's interest; because the power of sale contained in the mortgage could not be exercised after the closing of the bank on September 18, 1931; and because the receiver of the bank had no authority to carry on the foreclosure of the mortgage.

The bank receiver in the case at bar was appointed under and by virtue of the authority conferred by Act No. 66, §§ 62, 63, Pub. Acts 1929 (3 Comp. Laws 1929, §§ 11959, 11960), and the order of the circuit judge as of October 19, 1931. Act No. 66, Pub. Acts 1929, provides:

"Sec. 62. If the commissioner shall become satisfied that * * * (conditions under which commissioner may ask for the appointment of a receiver) the commissioner of the banking department shall communicate such facts to the attorney general and, with his concurrence, application may be made by the attorney general in behalf of the commissioner, to a court of competent jurisdiction for the appointment of a receiver of such bank. Upon presentation of said application to said court; and upon its being made satisfied that * * * (certain conditions exist) the said court shall immediately appoint the banking commissioner, his deputy, or one of the banking examiners in the banking department, * * * as receiver and shall determine his bond and prescribe his duties, and may make such further order as shall seem proper: Provided, * * * The receiver, if any be appointed, shall, under the direc-

tion of the court, take possession of the books, records, and assets of every description, of such bank, collect all debts, dues and claims belonging to it, and sell or compound all bad or doubtful assets and sell all the real and personal property of such bank, on such terms as the court shall direct and may, if necessary, to pay the debts of such bank, enforce all individual liabilities of the stockholders. Such receiver shall forthwith pay over the money so collected or received to the State treasurer, and also make report to the commissioner of all his acts and proceedings.

"Sec. 63. Whenever arrangements shall be made by any such bank or the stockholders thereof by reorganization or otherwise, to the satisfaction of the commissioner of the banking department, to pay all creditors thereof, aside from the stockholders, and to make good the impairment of the capital stock in all particulars, and to pay the expenses of the receivership, if any have accrued, such facts shall be presented to the court, and the court may order the property to be turned over to the bank or to such stockholders, and shall discharge the receiver."

The court order of October 19, 1931, provides as follows:

"Now therefore, it is hereby ordered, adjudged and decreed that Charles H. Schutz is hereby appointed permanent receiver for the Romulus State Bank, a Michigan banking corporation, under the direction of this court, to take possession of all the books, records and assets of every description, belonging to the said bank, to collect all debts and claims belonging to it, and to take any action necessary to properly conserve the assets of said bank, all of said doing to be under the direction of the court. And the permanent receiver is hereby authorized, empowered and directed to collect, con-

serve and liquidate the assets of said defendant bank in the due course of its business and to collect payments upon mortgages, mortgage interest and other obligations owing to said bank, as the same shall become due and payable, and is authorized and directed to sequester the assets of said bank and to receive and collect the money and accounts due thereto and to pay and disburse its funds for proper purposes under the order and direction of this court, and to take charge, custody and control of all its assets and property and of its books, records, office and office equipment, securities, cash and bonds and accounts receivable.

"And the said receiver is further authorized to sue for and recover in appropriate actions all debts due said bank from any and all persons, and to foreclose delinquent mortgages and mortgages upon which the security is by the said receiver considered inadequate.

"And the said receiver is hereby further authorized and directed to bring and prosecute all actions at law or in equity under the powers here granted under the name and style of Charles H. Schutz, permanent receiver of the Romulus State Bank, a Michigan banking corporation, except as otherwise provided by law."

Neither in the act nor in the order appointing a receiver do we find any words indicating an assignment or conveyance of the bank's property to the receiver. The receiver is authorized to take *charge, custody* and *control* of the bank's assets.

Act No. 66, § 63, Pub. Acts 1929 (3 Comp. Laws 1929, § 11960) contemplates the reorganization of the insolvent corporation and the return of the property to the bank or stockholders under certain conditions. Neither the act nor the court order contemplates that the corporate entity would cease to exist upon the appointment of a receiver.

In 9 Zollmann, Banks and Banking (1st Ed.), p. 321, it is said:

"The appointment of a receiver suspends the rights and privileges of the bank until they are revived and reinstated by the comptroller or the judgment of a competent court.

"It is not tantamount to a forfeiture of the charter, but merely suspends some of the corporate functions of the bank, and does not incapacitate it from suing in its own name at the instance of the receiver, or for continuing an action then pending."

The appointment of a receiver for a banking corporation does not of itself constitute an assignment of its assets. In *Detroit & Toledo Shore Line R. Co.* v. *Campbell*, 140 Mich. 384, we quoted with approval from *Union National Bank of Chicago* v. *Kansas City Bank*, 136 U. S. 223 (10 Sup. Ct. 1013), the following:

" 'A receiver derives his authority from the act of the court appointing him, and not from the act of the parties at whose suggestion or by whose consent he is appointed; and the utmost effect of his appointment is to put the property from that time into his custody as an officer of the court, for the benefit of the party ultimately proved to be entitled, but not to change the title or even the right of possession in the property.' "

In *Montgomery* v. *Merrill*, 18 Mich. 338, a bank receiver was appointed under a statute (Act No. 3, Laws of 1837 [Spec. Sess.]) which "provide for proceedings in chancery against corporations, and for other purposes." It was claimed that the bank became defunct, and that the title to all the realty vested absolutely and in fee in the receiver. The court said:

"It cannot be seriously contended that the act of 1842 repealed the charter so that a forfeiture could be ascertained without a judicial sentence. The bill filed in 1844, on behalf of the State, assumes the

bank to be still existing, and prays forfeiture for cause. Apart from such a recognition, it would be contrary to legal principles to leave such a question open to be determined collaterally.

"The receiver, being appointed *ex parte,* and before a decree of forfeiture, can only be regarded as holding provisionally. It would not be competent for legislative authority to divest a title absolutely before a hearing, for until that time it could not be known whether there was any forfeiture, and, therefore, nothing could be established justifying complainant against the bank. A decree of forfeiture might very well justify the relating back of the title to the beginning of the receivership; but, on the other hand, this title, until adjudication, must be conditional and inchoate, and amount to no more than a possessory right for the purposes of the suit. * * *

"As the legal estate had never vested in the receiver, the land was subject to levy and sale. Whatever may be the effect of a temporary receivership in creating priorities, or in regard to possession, we think the statute authorizing lands to be sold on execution is inconsistent with the idea that, as against the debtor himself, such a levy would not be good when he has made no assignment to the receiver. And when the right of the receiver terminates, and he has made no sale, or other legal disposition of the land, the execution title will stand as if there had never been a receivership."

The case of *Chicago Fire Proofing Co.* v. *Park National Bank,* 145 Ill. 481 (32 N. E. 534), involves an action upon a note instituted by a bank. Later a receiver was appointed for the bank and the suit continued, the court said:

"The second ground relied upon to reverse the judgment is that the judgment should have been

entered in the name of the receiver and not in the name of the bank. After the appointment of a receiver, he no doubt had the right to take possession of the assets of the bank and collect the notes and other obligations due the bank. But a note payable to the bank might be sued in the name of the bank, or in the name of the receiver, as he might elect. * * * Or the action might be brought in the name of the bank for the use of the receiver, but the fact that this course was not pursued, does not affect the validity of the judgment.''

In the case at bar the receiver was appointed with authority ''to take possession of all the books, records and assets of every description, belonging to the said bank, to collect all debts and claims belonging to it, and to take any action necessary to properly conserve the assets of said bank, * * * and the said receiver is hereby further authorized to sue for and recover in appropriate actions all debts due said bank from any and all persons, and to foreclose delinquent mortgages and mortgages upon which the security is by the said receiver considered inadequate.'' The above authority was sufficient for the receiver to complete the foreclosure of the property and bid in the same at the foreclosure sale.

The property having been sold to Victoria Olszynski subsequent to the redemption period, the decree of the trial court is affirmed, with costs to plaintiff and defendants and appellees.

BUSHNELL, POTTER, and CHANDLER, JJ., concurred with SHARPE, J.

FEAD, C. J., and NORTH, WIEST, and BUTZEL, JJ., concurred in the result.