DETROIT & TOLEDO SHORE LINE RAILROAD CO. *v.* CAMPBELL.

1. EMINENT DOMAIN—RAILROADS—CONTRACTOR—RIGHT TO MAINTAIN PROCEEDINGS.

A contractor, who has taken a contract to procure the right of way and build a road for a railroad company, and has been authorized by it to bring suit in its name, may maintain condemnation proceedings in the name of the company.

2. SAME—RECEIVERS—RIGHT TO MAINTAIN PROCEEDINGS.

The appointment of a receiver for a railroad company on a judgment creditor's bill does not divest it of its franchises nor of the title to its property, and does not affect its right to maintain condemnation proceedings.

3. SAME—DE FACTO CORPORATION.

A de facto railroad corporation may maintain condemnation proceedings, only the State being authorized to question the legality of the incorporation.

4. RAILROADS—CONDEMNATION PROCEEDINGS—PETITION—MAP—SURVEY.

It is not now necessary that a petition for the condemnation of lands by a railroad company shall allege the filing of a map or survey. Act No. 280, Pub. Acts 1901.

5. SAME.

If it is essential that a map be filed as a prerequisite to condemnation proceedings by a railroad company, a map which points out in a general way the route and termini of the road as required by the statute (Act No. 80, Pub. Acts 1901,

§ 7), is sufficient, and it need not particularly describe the exact land to be taken.

6. SAME — APPEAL — QUESTIONS CONSIDERED — RULINGS ON EVIDENCE.

Questions raised over the introduction of evidence in proceedings by a railroad company to condemn land cannot ordinarily be considered on appeal, though evidence clearly improper might justify a reversal of confirmation, should it appear that it caused a substantial error on the part of the jury.

7. SAME—QUESTIONS OF FACT.

On appeal in proceedings by a railroad company to condemn land for a right of way, it is not within the province of this court to review questions of fact, further than to see that the finding is supported by the evidence.

8. SAME—PROCEDURE—JURY—SEVERAL OWNERS.

The statute for the condemnation of lands for a railroad right of way contemplates that one jury shall determine in one proceeding the questions relating to lands of different persons in a locality.

9. TRIAL—CONDUCT—TAMPERING WITH JUROR.

In proceedings by a railroad company to condemn land for a right of way, it is error for the counsel, witnesses, and jurors to mingle freely together, dining together, and for meals, cigars, and drinks, to be furnished by petitioner's representatives.

10. SAME—OBJECTIONS—TIME OF TAKING.

In proceedings by a railroad company to condemn land for a right of way, error consisting in the treating of the jury, etc., by petitioner's representatives, was seasonably taken advantage of by objection to confirmation.

Appeal from Wayne; Hosmer, J.   Submitted January 5, 1905.   (Docket No. 13.)   Decided June 8, 1905.

Condemnation proceedings by the Detroit & Toledo Shore Line Railroad Company against Henry M. Campbell and Caroline B. Campbell.   From an order confirming the award of the jury, defendants appeal.   Reversed.

*Gray & Gray*, for appellants.

*Brennan, Donnelly & Van De Mark*, for appellee.

140 Mich.—25.

HOOKER, J. The Detroit & Toledo Shore Line Railroad Company, being completed from Toledo to Trenton, let a contract to Strang to obtain for it the necessary right of way and construct the remainder of its projected railway from Trenton to Detroit; authorizing Strang to take the necessary steps in its name to condemn lands necessary for the purpose. Proceedings to condemn a right of way across many parcels of lands were instituted by Strang, a jury was impaneled, and awards made. The defendants named in this record have appealed.

The questions raised may be divided into three classes:

(1) Those raised to the jurisdiction of the court to submit the cause to a jury.

(2) Alleged errors in the admission or exclusion of evidence before the jury.

(3) Objections to the order of confirmation.

Upon the presentation of the petition the defendants answered, raising a number of questions relating to the jurisdiction of the court, to submit the matter to a jury, and a hearing was had and proofs were taken upon the issues thus raised. It was contended:

1. That this was not a proceeding by the railroad company, but by and for the benefit of a private person, and that such had no authority to institute the proceedings. The evidence upon which this was based tended to show, as hereinbefore stated, that Strang was under contract obligations to perform the service of securing the right of way, including payment for the same, and to construct the road, for which he was to receive an agreed sum in payment. He was authorized to use the company's name in condemnation proceedings where necessary, and instituted these proceedings in its name after failing in an attempt to obtain the right of way by purchase.

The right to the benefit of the law of eminent domain inures to railroad companies by virtue of the statute which confers powers upon the railroad companies similar to those used by highway authorities. These powers are sustained upon the theory that railroads are public high-

ways, in a sense, and that the public may condemn lands for railways, and that it is lawful to delegate the power to the railroad companies for the use of the public; i. e., the power is " delegated to a public agent to work out a public use." See *Swan* v. *Williams,* 2 Mich. 435; *Michigan Central R. Co.* v. *Ward,* 2 Mich. 547; *Consumers' Gas Trust Co.* v. *Harless,* 131 Ind. 450 (15 L. R. A. 507); *Venable* v. *Railway Co.,* 112 Mo. 119 (18 L. R. A. 73); *Gano* v. *Railroad Co.,* 114 Iowa, 721 (55 L. R. A. 267); *Township of Pine Grove* v. *Talcott,* 19 Wall. (U. S.) 676; *Taylor* v. *Ypsilanti,* 105 U. S. 64. That a corporation must in all things work through individuals who act as agents is obvious, and it is not necessary that it limit such agents to its officers or stockholders. It may employ an attorney to act for it, or it may choose a layman, so long as he is to act as the representative of the company and for its benefit. Strang acted for the company in procuring the right of way from the owners. Presumably the land required was designated by the company, and Strang was expected to procure it, not for his own, but the railroad's, use. We do not see a reason for denying the railroad the right to acquire a right of way by condemnation merely because it had a contract with Strang to take the necessary steps to condemn the land for and in the name of the railroad, or that the authority of the railroad was affected by the terms agreed upon between them as to how he should be paid for his services and disbursements.

In the case of *Ten Broeck* v. *Sherrill,* 71 N. Y. 276, it was held that the authority given to canal commissioners by statute to take lands from which to obtain gravel for repairs of the canal was not impaired by the fact that the State had let the work by contract, or that the contractor was to furnish the materials. It was said that this was a question between the State and the contractor, and did not affect the power of the canal commissioners. A similar holding is found in the case of *Bliss* v. *Hosmer,* 15 Ohio, 44   See, also, *State* v. *Mayor, etc., of Newark,*

54 N. J. Law, 62. Several cases are cited by counsel which hold that although the railroad company may lease the road, even though it be for the full period of its charter rights, the authority to condemn property is not lost, and proceedings may be taken in its name. *In re New York, etc., R. Co.*, 35 Hun (N. Y.), 225, 99 N. Y. 20, following *Kip* v. *Railroad Co.*, 67 N. Y. 227; *Chicago, etc., R. Co.* v. *Illinois Cent. R. Co.*, 113 Ill. 156.

We must hold, therefore, that the arrangement made with Strang did not divest the petitioner of its power to condemn land, and that the institution of the proceedings by Strang was upon its behalf.

2. It was urged that the proceedings were void for the reason that the road was, at the time they were instituted, in the hands of a receiver appointed by the Federal court at Detroit, who, if any one, had the exclusive authority to institute such proceedings. As a foundation for this point, it was shown that a judgment had been rendered against the railroad company by the Federal court at Detroit in favor of Henry A. Everett; that a creditors' bill had been filed and a receiver appointed in 1902, who had not been discharged at the time the petition in this proceeding was filed, though he has been since. The gist of this objection we understand to be that the appointment of the receiver divested the company of the power granted it by the State, and gave it to the receiver, or, if not, that it suspended its power to act while its property was in the custody of the court.

We have said that the reeceiver was appointed upon a creditors' bill, which, of course, sought to apply the property of the defendant to the judgment owned by Everett. We have not before as the proceedings in that case. All that our attention is called to is the order appointing the receiver, which provides that:

"On reading and filing the bill of complaint and the answer of the defendant in this cause, and on motion of Brennan, Donnelly & Van De Mark, solicitors for the complainant, with the consent of Mr. Guy M. Walker,

solicitor for the defendant, it is ordered, adjudged, and decreed that Allen F. Edwards be, and he is hereby, appointed temporary receiver, until the further order of this court, of all the property, real and personal and mixed, of every kind, belonging or in the possession of the defendant railroad company, and, if necessary, to sue for, in the name of said receiver, and recover, all such property, whether in possession or in action, and that, upon demand made by said receiver, the defendant company, its officers and agents, shall forthwith deliver over to the receiver all of the aforesaid property, and that neither said company, nor any officers or agent or employé of said company, shall interfere with or molest the possession or enjoyment of any of said property in the possession of such receiver by said receiver.

" And it is further ordered, adjudged, and decreed that the said receiver be, and he is hereby, empowered and directed to carry on the business of the said defendant company until the respective rights of the parties in interest can be fully ascertained and determined, under and subject to the supervision, direction, and control of this court, and until otherwise ordered by this court, and to use and employ the property, franchises, rights of way, roadbed, tracks, locomotives, rolling stock, machinery, fixtures, and property, of whatever kind or nature, and to take and receive revenues, issues, and profits of said business and property; and said receiver shall be, and he is hereby, invested with all the rights and franchises vested by law in said defendant railroad company in the duties and trusts aforesaid; and said receiver shall have authority to employ all necessary and proper agents, officers, and laborers, and to fix and alter their compensation, subject to the supervision of this court. Said receiver shall also have authority, subject to the supervision of this court, to make such repairs and necessary additions to said railroad and property as may be essential to the interest and safety of the same, and proper, in his judgment, for carrying on said business; also to make all contracts that may be necessary in carrying on the business of said railroad company, subject to like supervision of this court; also to collect in his own name, as receiver as aforesaid, all debts, claims, or demands, of whatsoever kind or nature, owing, or that may become due and owing, to said company or to said receiver from any and all sources. Such receiver is ordered to make and return a

full, true, and correct inventory of all of the property that may come into his hands as receiver. It is further ordered that, out of the moneys that shall come into the hands of said receiver from the operation of said railroad, he shall pay all current expenses incident to the creation or administration of his trust, and all sums to become due to connecting or intersecting lines of railroads, arising from the interchange of business, and all amounts now legally due from said railroad company for taxes. It is further ordered that said receiver shall retain possession and continue to discharge the duties and trust aforesaid until the further order of this court in the premises; and that he shall from time to time make reports of his doings in the premises, and may from time to time apply to the court for such other and further order and directions in the premises as he may deem necessary and requisite to a due administration of said trust; and said receiver is hereby vested, in addition to the powers aforesaid, with all the general powers of receivers of this kind, subject to the supervision of this court."

It can hardly be contended that this order was effective to divest the railroad company of its title to its property. Counsel for the petitioner have cited many cases which support their claim that under the rule of the Federal courts a receiver appointed under circumstances like those in this case is a mere custodian of property, without title, which remains in the company. *Wiswall* v. *Sampson*, 14 How. (U. S.) 52; *Union Bank of Chicago* v. *Kansas City Bank*, 136 U. S. 223. In this case a receiver was appointed upon a judgment creditors' bill. The court said:

" A receiver derives his authority from the act of the court appointing him, and not from the act of the parties at whose suggestion or by whose consent he is appointed; and the utmost effect of his appointment is to put the property from that time into his custody as an officer of the court, for the benefit of the party ultimately proved to be entitled, but not to change the title or even the right of possession in the property."

This language was cited with approval in the case of *Quincy, etc., R. Co.* v. *Humphreys*, 145 U. S. 97, as was also the case of *Gaither* v. *Stockbridge*, 67 Md. 222, where it was said:

"It is manifest that the scope of his duties and powers is very much more restricted than those of an assignee in bankruptcy or insolvency. In the case of an assignee in bankruptcy, the law casts upon such assignee the legal title to the unexpired term of the lease; and he thus becomes assignee of the term by operation of law, unless, from prudential considerations, he elects to reject the term as being without benefit to the creditors. But not so in the case of receivers, unless it be, as in New York and some of the other States, where, by statute, a certain class of receivers are invested with the insolvent's estate, and with powers very similar to those vested in an assignee in bankruptcy. *Booth* v. *Clark,* 17 How. (U. S.) 331. The ordinary chancery receiver, such as we have in this case, is clothed with no estate in the property, but is a mere custodian of it for the court, and, by special authority, may become an officer of the court to effect a sale of the property, if that be deemed necessary for the benefit of the parties concerned. If the order of the court under which the receiver acts embraces the leasehold estate, it becomes his duty, of course, to take possession of it. But he does not, by taking such possession, become assignee of the term, in any proper sense of the word. He holds that as he would hold any other personal property involved, for and as the hand of the court, and not as assignee of the term."

*Dayton Hydraulic Co.* v. *Felsenthall,* 116 Fed. 961; *Stokes* v. *Hoffman House,* 167 N. Y. 560 (53 L. R. A. 870). The case of *Ohio, etc., R. Co.* v. *Russell,* 115 Ill. 52, indicates that a receivership not only does not divest title, but does not necessarily suspend all powers of a railroad company. The court said:

"Notwithstanding the appointment of the receiver, the corporation is clothed with its franchises, and such corporation still exists. The effect of the appointment of the receiver is simply to give him the temporary management of the railroad, under the direction of the court, instead of the manager appointed by the directors of the corporation. It is that, and nothing more. As the corporation still exists, it may still exercise, as before, its franchises, so it does not interfere with the rightful management of the road by the receiver, so far as his duties are defined by the court appointing him. No doubt, it may do many

corporate acts, and certainly it can do all things neces-
sary to preserve its legal existence, notwithstanding the
appointment of the receiver to which the temporary man-
agement of the road is given; otherwise the appointment
of the receiver would be tantamount to a dissolution of
the corporation."

*Herring* v. *Railroad Co.*, 105 N. Y. 371; *Ellis* v.
*Railroad*, 107 Mass. 1; *Union Trust Co.* v. *Weber*, 96
Ill. 346; *Keeney* v. *Insurance Co.*, 71 N. Y. 396; *Mem-
phis, etc., R. Co.* v. *Railroad Com'rs*, 112 U. S. 609.

Counsel for the defendants cite several cases holding
that a receiver may, under the direction of the court, pro-
ceed to condemn property necessary to the use of the road
which has been placed in his charge. In such cases,
where title has not vested in him, he must do it as one rep-
resenting the road, if not in its name. In this case the
receiver has not been directed to take such action, and has
not assumed to do so. Neither has he in any way opposed
the action by Strang, and in fact he was discharged by
the court pending the proceedings, though the latter fact
may not affect the question. The evident object of this re-
ceivership was to impound, and incidentally conserve, the
property, to the end that it might be applied to Everett's
judgment so far as should be necessary. At that time this
road was completed to Trenton. Strang was under con-
tract obligations to procure the right of way on behalf of
the company, and complete the road to Detroit. We may
well doubt the efficacy of this order to confer upon the
receiver authority to prevent Strang from doing this,
though we place a most liberal construction upon the or-
der. We have no doubt that the receiver must have pro-
ceeded in the name of the company, had the court directed
him to complete the road, and we cannot suppose that the
court intended to direct this in disregard of Strang's con-
tract rights. At all events, we are of the opinion that,
where title does not vest in the receiver, the fact that he
may, if directed by the court, proceed to condemn land for
and on behalf of the railroad, is not inconsistent with the

claim that the railroad company is not divested of its power, and may exercise it so long as it does not interfere with the control of the receiver, or transgress any order of the court appointing him.   See *Morrison* v. *Forman*, 177 Ill. 427; 3 Elliott on Railroads, § 958.

3. The jurisdiction was attacked on the ground that the articles of association failed to show that the railroad company was lawfully incorporated.   The grounds upon which this claim was made are that the articles of association did not sufficiently designate the termini of the road, and that the map and survey filed did not comply with the law.

2 Comp. Laws, § 6223, provides for the organization of railroad companies, and that for such purposes the requisite persons shall subscribe articles of association.   The statute provides what the articles shall contain, and among them is the requirement that they shall state the places from and to which, and the name of each county into or through which, it is intended to be constructed, and its length, as near as may be.   It provides further that after subscription and payment of the required amount the articles shall be filed, and thereupon the subscribers shall be a body corporate.   The petition alleged that the petitioner was a corporation organized and duly incorporated under the laws of this State.   The answer questions this, and avers that the " articles of association do not state the points between which said road is intended to be constructed, nor its length, as near as may be, as required by section 6223 of the Compiled Laws of 1897."   It also denied that any map or survey such as is required by the railroad law has been filed in the office of the register of deeds for the county of Wayne.   It now claims that the company failed to prove compliance with the statute.   The petition is the only source from which we can ascertain petitioner's description of the line.   It states that the railway was to extend "from a point in the northeast quarter of section 16, near the corner of sections 9, 10, 15, and 16," etc., northerly to the city of Detroit.   Nothing is indicated as to the length of the line.   The petition states, also:

" That your petitioner has surveyed the route of its proposed road in said county of Wayne, and has made a map. and survey thereof, by which said route is designated, which said map has been submitted to and approved by the railroad crossing board of said State of Michigan, as required by law, and which is on file in the office of the register of deeds in and for said county, and that it has located its said road according to such survey, and that it has filed a certificate thereof, signed by the president and secretary of said company, your petitioner, and under its corporate seal, in the office of the said register of deeds."

Defendants contend that the termini mentioned are indefinite; that the length of the line should have been stated. The points made against the map and survey are that " a red line shows the center of the tracks, and not the center of the right of way;" "it does not state the width of the right of way, nor any courses nor distances," and that " it would be impossible from the map to lay out respondent's land, or the right of way desired across it, except as one might measure the distances on the map by scaling and determine the courses by measurement of angles;" and that entire accuracy would be impossible.

We may pass the claim that the company was not legally incorporated by saying that the record shows a de facto corporation, which is sufficient. See 2 Elliott on Railroads, § 497, and cases cited. It has been often held in this State that the State only can question the validity of an incorporation. See *Toledo, etc., R. Co.* v. *Johnson,* 49 Mich. 148, 55 Mich. 456. And in *Schroeder* v. *Railway Co.,* 44 Mich. 387, it was held that the question could not be passed upon in condemnation proceedings, and it was repeated in the case of *Traverse City, etc., R. Co.* v. *Seymour,* 81 Mich. 378. This being so, the failure to state the termini or length of the road in the articles becomes unimportant in that connection.

It is asserted that the map and survey filed were indefinite, and did not comply with the requirements of the statute. Section 18 of the act as originally passed (sec-

tion 6243 of the Compiled Laws of 1897) contains the requisites of a petition for condemnation.   Among these is the requirement that the petition contain the description of the real estate sought to be condemned, and the allegation that the company has made a map and survey by which the route is designated; that it has located its road according to such survey, and filed a certificate thereof in the register's office of the county.   Under this section we have held that a failure to allege and show the filing of such a map and survey, and that they fully and definitely described, or at least included, the land sought to be condemned as a part of the route, is fatal to the proceeding. *In re Convers*, 18 Mich. 465; *Toledo, etc., R. Co.* v. *East Saginaw, etc., R. Co.*, 72 Mich. 225.   At the time these decisions were made the provisions of section 18, as above set forth, were in force.   That section has since been amended (Act No. 80, Pub. Acts 1901), and now contains no provision requiring an allegation that a map or survey has been filed.   Had section 18, as theretofore existing, been the same as it now is, it would have afforded no ground for the decisions cited, and they could only have been planted upon the then existing provisions of section 7, viz.:

"(6232)   SEC. 7.   Every such company proceeding to construct a part of its road into or through any county named in its articles of association, or which shall have been so constructed, shall make a map of such part of the route   intended to   be adopted   by   such   company,   or which shall have been adopted, giving also the location of the points selected for crossing any other railroad, which shall be certified by a majority of the directors and approved by a board consisting of the commissioner of railroads, attorney general and secretary of State, and   filed in the office of the register of deeds of such county."

We doubt if section 7 contained any such requirement, *first*, because it did not mention a survey; and the map there required seems to have been designed to point out, in a general way, the location of the *route*, rather than the land to be devoted to it, subject to approval by the

statutory board; and, *second,* no allusion is made to the subject of condemnation of lands. Its object may well have been to afford an opportunity for opposition from other railroad companies, and perhaps other persons interested in preventing such location of the route.

Counsel cite cases supporting their claim that this map is not a prerequisite to condemnation. See *Missouri River, etc., R. Co.* v. *Shepard,* 9 Kan. 647. In this case a similar statute was relied upon. Mr. Justice Brewer disposed of the question by showing that the filing of the map was not a prerequisite to the condemnation of the land—a matter which is within legislative control. Our statute is subject to the same construction. See Act No. 80, Pub. Acts 1901, § 7. See, also, 3 Elliott on Railroads, § 926; *Chicago, etc., R. Co.* v. *Grovier,* 41 Kan. 685; *Wheeling, etc., R. Co.* v. *Oil Co.,* 35 W. Va. 205. It is unnecessary for us to go so far, though we know no reason for not doing so. There is nothing in section 7 which requires certainty of description as to the exact land to be taken. It is a map of the route, not of the right of way to be acquired.

Our decisions cited would be conclusive, but for the amendment of section 18. As it now stands, there is no express requirement that a map be filed as a prerequisite to condemnation; and, if the proviso in the amended section 7 is to be taken as an implication that a map is essential, it is only such a map as section 7 provides for, and we think the one filed sufficient. See Act No. 80, Pub. Acts 1901.

5. It was insisted that there was insufficient proof of preliminary negotiations requisite to the commencement of condemnation proceedings. We are of the opinion that the evidence justifies the conclusion that a reasonable effort to purchase the land was made. The claim that the parties did not have a mutual understanding as to the land desired is technical. The evidence shows that no dispute arose about that subject, but only over the price per acre to be paid, and that there would have been no trouble

over the particular land required, if they could have agreed upon the price per acre. We think that we have covered the jurisdictional questions, and that the court did not err in impaneling a jury.

6. We will next consider questions which arose upon the hearing of the cause before the jury. These involve (a) the question whether the testimony of several witnesses upon the question of value, etc., should not have been excluded; (b) the propriety of receiving evidence regarding the amounts paid for, and offers of, other parcels of land; (c) testimony by Strang regarding the expense caused by the delay of these proceedings. Questions raised over the introduction of evidence cannot be considered in these proceedings, ordinarily. We have so held in many cases cited in the briefs of counsel, repeated here for future reference. *Michigan Air Line Railway* v. *Barnes,* 44 Mich. 226; *Toledo, etc., R. Co.* v. *Dunlap,* 47 Mich. 456; *Port Huron, etc., R. Co.* v. *Voorheis,* 50 Mich. 510; *Detroit, etc., R. Co.* v. *Crane,* 50 Mich. 182; *Fort-Street Union Depot Co.* v. *Jones,* 83 Mich. 415; *Marquette, etc., R. Co.* v. *Longyear,* 133 Mich. 94. It is true that evidence clearly improper might justify a reversal of confirmation, should it appear that it had caused a substantial error on the part of the jury, but we do not find such to be the fact here.

7. The order of confirmation is attacked on the ground that the jury were subjected to improper influences, and because the award was inadequate. It is not within our province to review the question of fact, further than to see that the finding is supported by the evidence. There was a wide difference in the opinions of witnesses as to the value of the land, and damage to follow its condemnation, and the finding should not be disturbed on the ground of inadequacy of the award.

8. It is urged that the verdict is void for the reason that the jury determined the necessity for taking the defendants' land before hearing the testimony as to its value, or the damages resulting from its condemnation. We under-

stand this to mean that, by rendering prior awards as to other parcels, the jury had prejudged the question of necessity as to defendants' parcels. We think that the statute contemplates one proceeding for the condemnation of lands of different persons in a locality. *Chicago, etc., R. Co.* v. *Sanford*, 23 Mich. 428. Without saying that successive applications may not be made, or that one petition embracing all land sought to be condemned on a line, or even in a county, is necessary, the common practice is for a jury to determine the necessity for a railroad, highway, or drain in connection with the various parcels sought to be condemned, and any other method would seem to be impracticable. If a different jury were to be required for each parcel, the verdict of any one which failed to find a necessity for the improvement would block the proceedings, perhaps after many awards had previously been made and paid. That the jury should not prejudge a defendant's rights by foreclosing the question of necessity before considering his parcel, or the prospective damages to it, is true. (See *Paul* v. *City of Detroit*, 32 Mich. 108.) But we do not see that this was done in this case. It is intimated in counsel's brief that successive awards were made, but our attention is not called to the same in the record, while the award which was confirmed includes a number of parcels and parties. Manifestly the amount of damage to each parcel must be determined by itself, and such determinations, if made separately, and tentatively or conditionally, and subject to a final conclusion as to necessity, should not be objectionable. It is not shown that confirmation was objected to upon this ground, and this is another reason why we cannot disturb the verdict.

Confirmation of the verdict was opposed upon the ground that the verdict was ascribable to the improper conduct of persons interested for the petitioner toward the jury, and the court was asked to refuse such confirmation and order a retrial upon the ground that the jury had been influenced thereby. Testimony was taken upon this subject, and it was shown that, on the occasion of the view

of the premises, counsel and witnesses and jurors mingled freely, dined together, and that meals, cigars, and even drinks were ordered for the jury and paid for by petitioner's representatives. The court was of the opinion that there was no impropriety in all visiting the land together, i. e., court, counsel, parties, and jurors. Taking property by virtue of the right of eminent domain is a proceeding that ought to demand quite as careful oversight as the trial of any other case, for it deals with as important interests as any civil cause. If it is necessary for the jury to view the premises—and it generally is—we think that the opportunity should not be given to parties and bystanders to express unsworn opinions to them, either in private or general conversation; and the practice of dining or treating jurors, which would be considered as unwarranted, if not censurable, is quite as objectionable in these cases. We do not know that the jurors were influenced in this case, but we are of the opinion that owners of land should not be subjected to such dangers, or be required to show affirmatively that they have suffered. It is claimed that objection was not seasonably made, and that the point was therefore waived. In the case of *Hicks* v. *Wayne Circuit Judge,* McGrath, Mich. Mand. Cas. 870, a new trial was ordered in a similar case, after confirmation, although the return of the circuit judge shows that the offending consisted merely of the furnishing of cigars to the jurors upon the statement in the presence of the opposite party that he would do so if he (the opposite party) consented. Assuming such consent from his silence, the cigars were furnished. In that case the relief granted was by mandamus. Here it arises upon objection to confirmation, which amounted to the same thing as a motion for new trial. The order of the circuit court is reversed, and a new trial ordered, as to the land in controversy in this cause.

The respondents will recover costs of this court.

MOORE, C. J., and MCALVAY, GRANT, and BLAIR, JJ., concurred.