## WOLFE *v.* STACK.

153    445
f156    ¹216

1. APPEAL AND ERROR—ASSIGNMENTS OF ERROR—SUFFICIENCY—DIRECTION OF VERDICT.

An assignment that the court erred in directing a verdict for defendant implies that upon the pleadings and evidence a prima facie case was made, and is sufficiently specific.

2. SALES — CONTRACTS — CONSTRUCTION — PARTNERSHIP — SURVIVING PARTNER—LIABILITY.

In an action against a surviving partner for goods and supplies sold and delivered to a lumber company alleged to have been operated by the firm, evidence examined, and *held,* that whether the firm in fact owned and operated the company's business, so as to render the surviving partner liable, was for the jury.

Error to Delta; Stone, J. Submitted April 8, 1908. (Docket No. 2.) Decided July 1, 1908.

Assumpsit by Augustus W. Wolfe against John K. Stack, surviving partner of himself and John Corcoran, deceased, copartners as Stack & Corcoran, and the Escanaba Lumber Company, for goods sold and delivered. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Reversed.

*Yelland & Norblad* (*Gallup & Gallup*, of counsel), for appellant.

*F. D. Mead*, for appellee.

MOORE, J. Suit was brought by the plaintiff, for himself and as assignee of the firms named in the title of the cause, against John K. Stack, as surviving partner of himself and John Corcoran, deceased, copartners, doing business under the firm name of "Stack & Corcoran." The declaration is on the common counts in assumpsit and alleges further that they were partners under the firm name of the "Escanaba Lumber Company." The suit was brought, as stated in the bill of particulars, to recover for goods sold and delivered to the Escanaba Lumber Company. It was stipulated that plaintiff's claim, as set out in plaintiff's bill of particulars, was a true statement of the debit side of the account of the plaintiff and his assignors with the Escanaba Lumber Company, according to the books of that company. It was further stipulated, however, that this stipulation should in no way admit the liability of the defendant to pay the accounts or any part thereof.

It was also the claim of plaintiff that defendants took control and managed the business under such circumstances as to make them liable for the supplies furnished by plaintiff and his assignors which it was claimed were used in the business. After plaintiff had concluded his testimony, and without defendant offering any testimony, the trial judge directed a verdict in favor of defendants. The case is brought here by writ of error.

We are confronted at the outset with the question of

whether the assignment of error is a good one. The appellee claims it is too general to be considered. The assignment is: "The court erred in directing a verdict in favor of the said defendant of no cause of action." Counsel cite *Johnson* v. *Ballou,* 25 Mich. 460, and *Jackson Bridge & Iron Co.* v. *Insurance Co.*, 122 Mich. 433. In the first of these cases the court considered the case and reversed it. We will refer to the last named case later. The case of *Conely* v. *Dudley*, 111 Mich. 122, is on all fours with the case at bar. In that case the court said:

"It is contended that the assignment of error, i. e., 'that the court erred in directing a verdict for the defendants,' is not special under Sup. Ct. Rule No. 12. Upon this record this assignment was equivalent to saying that there were facts in the case upon which a jury might find plaintiffs entitled to recover,—a radically different case from one where the court is said to have committed error in directing a verdict for the plaintiffs, or in refusing to direct one for the defendants."

In the case of *Jackson Bridge & Iron Co.* v. *Insurance Co.*, supra, the court referred to the case of *Conely* v. *Dudley*, supra, in the following language:

"The case of *Conely* v. *Dudley*, 111 Mich. 122, may seem exceptional, as the case was reversed upon the assignment that 'the court erred in directing a verdict for the defendant.' The case appears to be in a nutshell, no testimony being offered by the defense, and there was no possible uncertainty as to what was meant. In *Michigan Mut. Life Ins. Co.* v. *Mather*, 113 Mich. 357, the assignment was that the court erred in refusing to direct a verdict for the defendant. The question does not appear to have been raised, and the case was affirmed on other points. The decisions are uniform upon the question, unless the case of *Conely* v. *Dudley*, supra, should be thought to be inconsistent. It was looked upon as exceptional, and was not intended to change the rule, but, rather, as not being within the rule, because not within its reason; the only possible question being whether there was evidence requiring the submission of the case to the jury."

In the case before us no one has been misled. The case has been thoroughly briefed on both sides. The court and counsel both understood that the question was whether upon the testimony offered by the plaintiff the case should be submitted to the jury. Upon the record made we think the assignment sufficient.

This brings us to the important question in the case: Did the plaintiff make a case which in the absence of any testimony on the part of defendants entitled him to have his case submitted to the jury? His testimony consisted of four written contracts, portions of an answer in a chancery case which was sworn to by Mr. Corcoran, the oral testimony of a number of witnesses, book entries and checks. In the second of these contracts was the following:

"It is hereby agreed by and between the parties hereto that said parties of the first part shall dispose of lands or cut and manufacture all the timber upon said lands, to sell all chattels, materials, etc., and apply the actual amount of the money received as follows: To apply as payment on the within mentioned indebtedness or any other money said first parties may pay out for any purpose, etc. * * *

"It is further hereby agreed and understood, by and between the parties hereto, that said parties of the second part shall be entitled to a reconveyance of all the real estate and chattels or personal property which has not sooner been disposed of by said first parties, upon the payment of the amount due to said first parties by said second parties, paying all the expenses of transfer, stamps, recording, etc., any material, goods, machinery, etc., purchased to become the property of said first parties as soon as received by either parties, this to include all debts of said parties, including September 19th, 1899, and after which went to the business of said second parties, also contract between the parties hereto, dated September 19th, 1899, to continue in force.

"Dated this 18th day of February, 1901.

"Signed,
"STACK & CORCORAN,
"ISAAC LANFORD,
"JOHN S. ARMSTRONG,
"RAE F. ARMSTRONG."

Upon March 4, 1901, a contract was prepared by John Corcoran reading as follows:

"Articles of agreement, made and entered into this 4th day of March, in the year of our Lord nineteen hundred and one, by and between Isaac L. Lanford, John S. Armstrong and Rae F. Armstrong, copartners under the firm name of Masonville Hoop Company, of the township of Masonville, Delta county, Michigan, parties of the first part, and Joseph E. Reinger, party of the second part.

"It is hereby known and understood by the parties hereto that the above named concern, Masonville Hoop Company, is owned and controlled by Stack & Corcoran of the city of Escanaba, Michigan, but, whereas, Isaac L. Lanford has put in said concern, cash to the amount of one thousand dollars, property one thousand dollars; John S. Armstrong cash five hundred dollars; Rae F. Armstrong, cash five hundred dollars, and on the payment of one thousand dollars by Jos. E. Reinger to Stack & Corcoran, to be placed on the credit of said Masonville Hoop Company, said first party assigns, sells and sets over to said second party, a one-third interest of all of our interest in said Masonville Hoop Company, which we have a contract with said Stack & Corcoran the right to redeem, release said property by paying to said Stack & Corcoran all the indebtedness due them, and on the paying up and redeeming of said property, the parties hereto would be entitled to their interests as follows:

"Isaac L. Lanford, one-third; John S. Armstrong, one-sixth; Rae F. Armstrong, one-sixth; Joseph E. Reinger, one-third; and Isaac L. Lanford would be entitled to an additional one thousand dollars from the parties hereto for property put in.

"It is also agreed by the parties hereto that office of said concern be kept at Escanaba, Michigan, and that Joseph E. Reinger be general manager under the directions of said Stack & Corcoran and that all business will be transacted through the Escanaba office.

"The said Joseph E. Reinger agrees to give all his time and attention to said business and any outside business he may do in the way of buying and selling lumber, shingles, poles, etc., to be done in said concern's name, and said business derives any profit there may be in it, which is also to be done under the supervision of said Stack & Corcoran.

"It is also understood and agreed by and between the parties hereto, that any lands, material, machinery and all other property purchased by the parties hereto, or the said Stack & Corcoran to become the property of said Stack & Corcoran as soon as purchased, all material and property sold by said parties hereto to be done in the name of said Stack & Corcoran and under their directions and all money payable to them.

"The parties hereto are not entitled to salaries, not to exceed as follows, from this date; Isaac L. Lanford, sixty dollars; John S. Armstrong and Rae F. Armstrong, sixty dollars for John S. Armstrong's services; Jos. E. Reinger, sixty dollars per month, the salaries are for actual services performed by the said Isaac L. Lanford, John S. Armstrong and Jos. E. Reinger, Rae F. Armstrong not to be entitled to any salary. The parties of the first part are not to have any back salaries previous to this date.

"Signed,
"ISAAC L. LANFORD,
"JOHN S. ARMSTRONG,
"RAE F. ARMSTRONG,
"JOS. E. REINGER."

After the making of this contract there is evidence tending to show that Lanford, Armstrong and Reinger commenced to work upon a salary, and the business of cutting and manufacturing timber upon the lands formerly owned by the Masonville Hoop Company was conducted in the name of the Escanaba Lumber Company; Joseph E. Reinger acting as the manager but under the control and management of Stack & Corcoran. Later the following agreement was made:

"It is agreed and understood by and between the Escanaba Lumber Company and Stack & Corcoran, that any money received by said Escanaba Lumber Company, in connection with their business, is to be turned over to Stack & Corcoran as soon as received, for which said Stack & Corcoran agree to place to the credit of said Escanaba Lumber Company; also all checks, drafts, notes or paper of any other description received by said Escanaba Lumber Company, in connection with their business to be turned over to said Stack & Corcoran

as soon as received, for which said Stack & Corcoran
agree to place to the credit of said Escanaba Lumber
Company.

"It is understood by and between the parties hereto
that said Stack & Corcoran are the only ones that have
the right to purchase the lands, materials, etc., also to in-
dorse and negotiate drafts, checks, notes or papers of any
other description, received by said Escanaba Lumber
Company.

"This agreement not to interfere with any previous
agreement entered into.

"Dated this 12th day of.March, 1901.

"Signed,

"ESCANABA LUMBER COMPANY,

"Per JOS. E. REINGER, Mgr."

Later Mr. Corcoran swore to an injunction bill in which
Stack & Corcoran are the complainants; in which bill
the various contracts are referred to.   The following
paragraphs occur in said bill:

"And your orators further show unto the court that
thereafter, to wit: within a few days after the execution
of said last agreement, the name of the Masonville Hoop
Company was changed to that of the Escanaba Lumber
Company and the business of said company was thereafter
conducted under the name and title of the Escanaba
Lumber Company, your orators under the terms of said
contracts having title to and possession of all the property,
including mills, lands and offices of said Masonville Hoop
Company and said Escanaba Lumber Company.

"The said Joseph E. Reinger was employed by your
orators to superintend and care for the work of the said
Escanaba Lumber Company, in the forests, mills and of-
fices of the company under the direction, control, govern-
ment and orders of your orators and the said Joseph E.
Reinger was called and known as the manager of the
Escanaba Lumber Company, and as such had under the
direction of your orators, aforesaid, control and manage-
ment of the operations of said company in the forests and
mills.   *   *   *

"And your orators further show unto the court that,
since the 12th day of March, 1901, and down to the pres-
ent time, the said Joseph E. Reinger has been permitted
by your orators to manage said business, to superintend

said mills and the operations in the forests, connected with the affairs of the said Escanaba Lumber Company and to have charge of the office and the books thereof, but all under the control, management and direction of your orators.   *   *   *

"And your orators further show unto the court that, on account of said Joseph E. Reinger removing and causing to be removed the books mentioned in paragraph thirteen, and on account of said Joseph E. Reinger violating the contracts entered into by and between himself and your orators and his contract of employment, your orators on the 25th day of November, A. D. 1902, discharged the said Joseph E. Reinger from their employment, and that since said time, your orators have been in full custody and control of all of the business of said Escanaba Lumber Company, and that the said Joseph E. Reinger, since said discharge, has in no way had any custody or control of any of the business of said Escanaba Lumber Company, and that your orators are now in full possession and control of said business."

The evidence tends to show that insurance was placed upon the property of the Escanaba Lumber Company in the name of Stack & Corcoran as owners. Also that about November 26, 1902, John Corcoran served a notice upon the postmaster at Escanaba, claiming that the Escanaba Lumber Company was owned by himself and Mr. Stack, and that they were entitled to receive the mail.

Certain oral admissions of Mr. Corcoran were shown. In November, 1902, Mr. Corcoran made a complaint before a justice of the peace, charging Joseph E. Reinger with larceny of the books of the Escanaba Lumber Company. A large number of checks of the Escanaba Lumber Company signed by Stack & Corcoran given at various times from July 3, 1902, to December 2, 1902, were in evidence.

We have recited enough of the testimony to show that the plaintiff was entitled to have his case submitted to the jury.

Judgment is reversed, and new trial ordered.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.

HOOKER, J. (*concurring*). Error is assigned upon the direction of a verdict for defendant. This implies that, upon the evidence and pleading introduced, a prima facie case was made, for the direction of the verdict implies the contrary. It is true that the ground upon which the verdict is directed may be a lack of evidence, or an insufficient declaration, and it would certainly be a convenience to know which. But if no indication is given by the trial judge, a defeated party cannot well be more specific in his assignment.

Therein an assignment of error on a direction of verdict for defendant is distinguishable from a direction for a plaintiff, or a refusal to direct, for plaintiff or defendant, for in either of the latter, cases the appellant can and must point, out a specific defect, which necessarily or at least presumptively enters into the decision.

We have pointed out this distinction in two cases, viz., *Conely* v. *Dudley*, 111 Mich. 122; *Jackson Bridge & Iron Co.* v. *Insurance Co.*, 122 Mich. 433.

When the record affords the appellant the means of making an assignment more specific, we think it should be done, but when there is no means of doing so, as in the cases cited and in the present case, the assignment should be sufficient.

I concur with Mr. Justice MOORE in reversing the judgment.