GOLD v. DETROIT UNITED RAILWAY.

1. APPEAL AND ERROR—ASSIGNMENTS—DIRECTING VERDICT—SPECIFIC NATURE OF OBJECTION—SAVING QUESTIONS FOR REVIEW.
An assignment of error that the court erred in not directing a verdict for defendant is too general.

2. TRIAL—POSTPONEMENT—WITNESSES—DISCRETION.
Except in extreme cases, the exercise of the discretion of the trial court in refusing to delay a trial to enable defendant to procure additional witnesses will not be reviewed.

3. NEGLIGENCE—STREET RAILWAYS—LISTENING AT CROSSING.
Upon undisputed evidence that plaintiff stopped, looked, and listened before attempting to drive across street car tracks in a city where the view was partly obstructed, there was no prejudicial error in advising the jury in the court's charge that he was not obliged to stop.

4. TRIAL—VIEW—UNAUTHORIZED VISIT OF JUROR TO PREMISES.
Where one of the jury, during the trial of a negligence case, visited the scene of the accident during recess and viewed

the premises, and, on the court being informed of such misconduct, instructed the jury that knowledge so obtained should not be used, and that it was an improper proceeding, the appellate court will not grant a new trial which the trial judge denied, finding that defendant was not prejudiced.

Error to Wayne; Murfin, J. Submitted January 24, 1912. (Docket No. 7.) Decided March 12, 1912.

Case by Barnett Gold against the Detroit United Railway for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*Corliss, Leete & Joslyn* and *Benjamin S. Pagel,* for appellant.

*Friedman, Smilansky & Blumrosen,* for appellee.

BLAIR, J. Plaintiff is a huckster, and at the time of the accident had been engaged in the business of selling vegetables in Detroit for several years. He used in his business a horse and wagon to transport his stock. On the morning of July 22, 1909, he had been to the commission houses to buy his stock, and was starting on his rounds, when the accident which gives rise to this suit occurred. St. Antoine street is a well-known thoroughfare in Detroit, which runs in a northerly and southerly direction. Clinton street, another public thoroughfare, intersects St. Antoine at right angles. A car track on which defendant operates cars traverses the middle of Clinton street. The cars run in a westerly direction. Plaintiff was driving north close to the easterly curb on St. Antoine street, and his view towards the east along Clinton street (the direction from which the cars came) was obstructed by a three-story brick building, located on the southeasterly corner of the intersecting streets. Plaintiff testified that he knew of the existence of the car track on Clinton street, and that as he approached it he took the precaution to stop his horse and look for a car. When he stopped, his horse's head was 5 feet from the

track. He further says that he saw no car coming, but, on account of the location of the said brick building, he could only see easterly 75 feet; that because he could see no car he thereupon proceeded to cross the tracks; and that as his horse got onto the track he first saw the car a few feet away, and coming very fast and without any warning signal. The car struck the rear of the horse and the front wheels of the wagon, injuring the driver and horse, and damaging the wagon. Plaintiff having secured a verdict and judgment, defendant seeks a reversal of the judgment.

The first assignment of error, "for that the court erred in not directing a verdict for the defendant," is too general to require its consideration. *Jackson Bridge & Iron Co.* v. *Insurance Co.*, 122 Mich. 433 (81 N. W. 265); *Wolfe* v. *Stack*, 153 Mich. 445 (116 N. W. 1010); *Canerdy* v. *Railway Co.*, 156 Mich. 211 (120 N. W. 582).

The third and fourth assignments of error are based upon the refusal of the court to grant defendant time to obtain its principal witnesses. The application was made orally, after plaintiff had rested and defendant had taken the testimony of one witness. The matter of delaying a trial to enable a party to get his witnesses is one so peculiarly within the discretion of the trial judge, that we should not feel warranted in reviewing such discretion, except in a very extreme case, and we do not consider this to be such a case.

The fifth assignment alleges that the court erred in charging the jury as follows:

"He [plaintiff] is not bound, gentlemen of the jury, in the case of a street car crossing, to exercise the same care that we are compelled to exercise when approaching a steam railroad crossing. The rule in steam railroad cases generally is, not universally, but generally, that you must stop, look, and listen. Obviously that rule has no application to street cars. He is not obliged to stop, gentlemen, before he crosses the tracks; but he is obliged to bring to bear his faculties and his senses, as an ordinarily careful and prudent person would before he crosses a track,

to ascertain and determine to his satisfaction whether or not it is safe to cross. If he neglects to do that, then he is guilty of such negligence on the subject as will preclude his recovery. If, however, he does that, then he is not guilty of such negligence as will preclude him from recovery."

The sixth assignment alleges error in the following portion of the charge:

"After all, gentlemen, I think you know as well, possibly, as the court, having been here as long as you have, what is meant by these conflicting terms, the exact definition—negligence and contributory negligence."

The undisputed evidence showed that the plaintiff did stop, look, and listen when his horse's head was 5 feet from the track; that he looked up the track 75 feet, which was as far as he could look; and that he saw no car and heard no signal. Assuming that the court erred in holding that the rule did not require plaintiff to stop, this error could not have prejudiced defendant. The excerpts quoted are only a portion of the charge, and, considering the entire charge, we are not satisfied that there was such prejudicial error as to require a reversal of the case.

The seventh assignment of error alleges—

"That the court erred in not discharging the jury from further consideration of the case when it appeared that one of the jurors had made a private investigation of the premises where the accident had occurred, and had reported his findings during the consideration of the case by the jury."

After the jury had retired to consider their verdict, they returned into court and presented a written question to the court, whereupon the following occurred:

"*The Court:* No, Mr. Foreman; that is very improper. If any juror has done that, he has done that which he should not have done. I think, Mr. Donaldson, the record should show this. The question that is asked of me by the foreman is, 'Can a juror use knowledge that he has acquired during the noon recess, relative to surroundings, in his argument in the jury room?' The jurors, of

course, will bring to bear in the trial of an issue of fact their general knowledge; but it is improper for a juror, during the progress of a trial, to go out and make an individual, detailed study of the surroundings, in the absence of the other jurors or of the court or of the lawyers. If a juror has done that, he has done that which he should not have done, and, having done that, it would be improper for him to use that as a basis for argument. I am not sure, gentlemen, what the effect of the verdict will be in the light of this disclosure; nevertheless, you may retire and consider the case. That is a matter for subsequent determination."

This conduct of one of the jurors is also made a ground for the motion for a new trial, in denying which the court held that, since there was no conflicting testimony as to the surroundings, and all of the jurymen concurred in the verdict for plaintiff, the defendant could not have been prejudiced by the view of the premises by the individual juror. Defendant contends that, under the rule in this State, the court must presume prejudicial error, and this undoubtedly is the general rule. *Churchill* v. *Alpena Circuit Judge*, 56 Mich. 536 (23 N. W. 211); *Detroit, etc., R. Co.* v. *Campbell*, 140 Mich. 384 (103 N. W. 856). Where, however, the only misconduct complained of is, as in this case, that a juryman has viewed the location of an accident on a public street necessarily familiar to many citizens, where the testimony is all one way as to the location and its surroundings, where the court cautions the jury against using such information, and where we can see that it is extremely improbable that such occurrence could have prejudiced the defendant, we adopt the reasonable rule announced by the Supreme Court of Minnesota:

"Not every unauthorized view of the *locus in quo* will require the setting aside of the verdict. Considerations of practical justice forbid it. It would be an injustice to deprive an innocent party of his verdict simply because there was a casual inspection of the premises by some of the jurors, or because they were familiar with them. If verdicts were set aside for such reasons, there would be no

reasonable limits to litigation, especially in cities where the opportunities are great for jurors personally to view the locality of an accident under consideration." *Rush v. Railway Co.*, 70 Minn. 8 (72 N. W. 734).

See, also, *Lyons* v. *Dee*, 88 Minn. 490 (93 N. W. 901). The judgment is affirmed.

MOORE, C. J., and STEERE, MCALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.