# JANUARY TERM, 1908.

BRIDGE STREET & ALLENDALE GRAVEL-ROAD CO. *v.*
HOGADONE.

1. TOLL ROADS — COMMISSIONERS — ABANDONMENT OF ROAD — DE-
TERMINATION—STATUTE—PROCEDURE—NOTICE—NECESSITY.

Act No. 91, Pub. Acts 1897, providing that the township com-
missioners of highways shall act as toll-road commissioners,
and authorizing them to determine when a toll road is aban-
doned, and to restrain the collection of tolls on any road so
abandoned, while it does not expressly provide for a notice
and hearing, impliedly requires one, and a determination by
a commissioner that a road has been abandoned and the
right to collect tolls thereon forfeited, without giving the
toll-road company any notice or opportunity to be heard, is
unauthorized and void.

2. EQUITY—CLEAN HANDS—TOLL ROADS—COMMISSIONERS—FRAN-
CHISES—EXERCISE—RIGHT TO OBJECT.

On a bill by a toll-road company to restrain unlawful inter-
ference by the toll-road commissioner with its exercise
of its franchises, a claim by defendant that complainant
does not come into court with clean hands, for the reason
that it did not complete its road, keep it in repair, nor file its
annual report, as required by the statute, is untenable, since
only the State, in some proper proceeding, can question com-
plainant's right to exercise its franchises.

3. CONSTITUTIONAL LAW — POWERS OF GOVERNMENT — DISTRIBU-
TION—JUDICIAL POWERS—CONFERRING ON MINISTERIAL OFFICER
—TOLL-ROAD COMMISSIONER.

Act No. 91, Pub. Acts 1897, authorizing toll-roads commis-
sioners to determine when toll roads are abandoned and to
restrain the collection of tolls on roads so abandoned, and
providing that the orders of the commissioners shall remain
of force unless revoked on appeal to the chancery court, is
unconstitutional as an attempt to confer judicial power
upon a ministerial officer.

(638)

Appeal from Kent; Wolcott, J.   Submitted February 13, 1907.   (Docket No. 137.)   Decided January 31, 1908.

Bill by the Bridge Street & Allendale Gravel-Road Company to enjoin Frank D. Hogadone, highway commissioner of Walker township, from interfering with complainant's corporate franchises.   From a decree dismissing the bill, complainant appeals.   Reversed, and decree entered for complainant.

*Grove & McDonald*, for complainant.

*Colin P. Campbell*, for defendant.

The complainant was organized July 12, 1887, under the plank-road law, for the construction of a toll road, extending from Grand Rapids, a distance of nine miles, through Walker and Tallmadge townships, to Grand River.   The life of the corporation was fixed at 50 years. It obtained the requisite consent of the township authorities to construct the road.   It immediately entered upon the work, claimed to have completed it, and until the commencement of this suit, August 7, 1905, maintained it and collected tolls.   The original cost of the road was about $36,000.   From January 1, 1905, up to the commencement of this suit, it had expended in repairs $3,029.85.   On August 20, 1888, the prosecuting attorney of Kent county filed a bill at the instance of the then highway commissioner against the complainant, charging the noncompletion of the road in accordance with the statute, and that it was not authorized to receive tolls.   A preliminary injunction was issued.   A hearing was had upon a motion to dissolve the injunction, and affidavits produced both pro and con. Upon that hearing, October 3, 1888, the court modified the injunction, permitting the company to receive tolls on the east two miles of the road.   On November 14, 1888, the injunction, upon the hearing upon affidavits, was wholly dissolved.   No further proceedings appear to have been taken in that suit.   The complainant has since continued

in the undisturbed exercise of its franchise and control of its road.

The defendant was highway commissioner of Walker township. On May 8, 1905, he served upon the complainant a notice declaring that complaint had been made to him that the road was out of repair, and was not being maintained as required by its charter; that he had found the road to be out of condition and repair and notified it to make very extensive repairs and improvements, which were specified in the notice, and that said repairs should be completed within 60 days. On July 11th following he served upon the company a notice that he had filed a certificate with the clerk of the township, certifying that the company had failed to comply with his order, and that it must cease and refrain from taking toll over said road, and from obstructing the road, and from preventing persons from passing over the same. Complainant was erecting a tollgate at a certain point in its road, whereupon the defendant notified it that it was unlawfully obstructing the road and commanding it to remove the toll house, gate, and fence. This order was not complied with, and thereupon the defendant proceeded to remove said so-called obstructions. The complainant then filed this bill to enjoin the defendant from interfering with the exercise of its franchise rights. The defendant's answer admitted the material allegations of fact as contained in the bill, but alleged in defense of his action that the complainant did not complete its road as required by the statute, and that it had not been kept in proper repair. The bill sets up that in 1905 unprecedented heavy rains had created washouts and damaged the road, and that it was engaged in making repairs before the notice was served, and that it continued to make such repairs with promptness. The answer neither admits nor denies the allegation in regard to excessive rain.

The defendant gave no notice of hearing or opportunity to produce proofs. He bases his action upon Act No. 91, Pub. Acts 1897, which reads as follows:

"SECTION 1. That after the passage of this act it shall be the duty of the commissioner of highways of any township through which any toll road may enter or pass, to act as toll-road commissioner, and he shall require all .toll-road companies in any such township in this State to construct, reconstruct, repair and maintain their roads in good repair, and of the same material and in the same manner as required by their charters, within six months after the passage of this act.    All toll-road companies who fail or neglect to comply with the provisions of this act shall be considered to have abandoned their road, and they shall cease thereafter to take toll, and no person traveling over such toll road shall be required to pay toll thereafter.

"SEC. 2. All toll-road companies who comply with the provisions of this act, within the time prescribed in section one of this act, shall be required by said township toll-road commissioner to maintain all such toll roads as herein required, and in default thereof, after being notified by said toll-road commissioner to repair such roads as herein provided, for any three consecutive months, then said toll roads shall be considered abandoned, and all such toll roads shall have no further right to collect toll, and shall cease to take toll thereafter, and no person shall be required to pay toll for traveling thereon after such abandonment as herein provided.

"SEC. 3. Said township toll-road commissioner shall examine all toll roads in his township when he shall have reason to believe they may not be properly kept in condition as provided in their charters.    Also, when required so to do by any taxpayer in any township into or through which any toll road may run, who shall make affidavit that he believes any such toll-road company is violating any of the terms or conditions of its charter, or is not keeping its road in good condition, and present such affidavit to such toll-road commissioner, and in case he shall find such road or any portion thereof not kept up to the requirements provided herein, he shall immediately notify such toll-road company of such defects as he may find, and he shall require them to repair and put into such condition as herein required within sixty days.    And in default thereof, the commissioner shall immediately make a certificate of such fact and file the same with the township clerk of his township, and such toll road shall be considered abandoned, and all such toll-road companies

shall cease to take toll for traveling thereon after such abandonment, and no person shall be required to pay toll for traveling thereon after such abandonment. After said certificate has been so filed, said toll-road commissioner shall notify any such toll-road company in writing of the filing of such certificate, and said company shall have no right thereafter to obstruct said road or prevent persons from passing over the same, or any part thereof, and it shall be the duty of said toll-road commissioner to prevent such obstructions, or to remove them if placed in said roads, as provided in any other of the highways of his township. Whenever any toll-road commissioner, after a full and complete investigation and hearing the evidence offered by parties concerned, shall determine that the said toll road in question is not maintained in accordance with the conditions and provisions of its charter, said toll road or toll-road companies, may within twenty days after such finding, appeal, as in other cases provided, from the decision of said commissioner to the circuit court in chancery of the same county. But the orders of said commissioner shall be and remain in full force until revoked by the order of the said court.

"SEC. 4. Any township highway commissioner, under the provisions of this act, who shall refuse, fail or neglect to perform his duties as herein provided, shall be guilty of a misdemeanor, and upon prosecution and conviction shall be fined not to exceed one hundred dollars or imprisonment in the county jail not to exceed ninety days, or both, in the discretion of the court."

The provisions of the law under which the complainant is organized, material to be considered, are the following:

"The legislature may at any time alter, amend or repeal this act; but such alteration or amendment shall not operate as an alteration or amendment of the corporate rights of companies formed under it, unless especially named in the act so altering or amending this act; and the legislature may annul or repeal any corporation formed or created under this act; but such alteration, amendment, annulling or repealing, shall not, nor shall the dissolution of any such company, take away or impair any remedy given for or against any such corporation, its stockholders or officers, for any liability which shall have been previously incurred." Section 6620, 2 Comp. Laws.

"Every plank-road company, * * * shall cause

the said gravel or broken stone of proper quality and quantity to be placed upon the road and kept in a uniform manner of the width and depth required by law; and in case of default they shall forfeit the right to receive any toll upon such road; and the prosecuting attorney of the county, on complaint of the highway commissioner of any township in which any portion of the road defectively constructed or out of repair lies, may institute a suit in the circuit court of the same county in chancery, to have such default judicially ascertained and declared; and the said circuit court in chancery for the respective counties shall have full jurisdiction of all cases arising under this act, to hear, try, and determine the same, upon bill or petition filed according to the usual course and practice of those courts." Section 6625, 2 Comp. Laws.

" Every plank-road company shall cease to be a body corporate if within three years, or if hereafter organized, then if within three years from the date of its organization, it shall not have commenced the construction of its road and actually expended thereon at least ten per cent. of the capital stock, and every plank-road company which shall have so far completed its road as to be entitled to receive tolls thereon, or upon some portion thereof, and shall have actually commenced to receive such tolls, shall cease to be a body corporate, if it shall hereafter neglect for the term of five years successively to hold the annual meeting for the election of directors, and shall hold no election of directors during all that time." Section 6627, 2 Comp. Laws.

Section 4119, 2 Comp. Laws, makes it the duty of the commissioner of highways of each township to see that all plank or gravel roads are maintained in good and safe condition; that he shall serve a notice upon the company if he finds any defect, describing the locality, and requiring the company to repair it within five days. The failure of the company to so comply is punishable by a fine of fifty dollars.

At the commencement of the hearing, and at the suggestion of the court, the question of the right of the defendant to take the action he did was raised and argued at length. The court held that the question whether the

company had forfeited its rights to its franchise and the right to take toll could not be raised in this way, but only by a direct proceeding instituted on behalf of the State as provided by the statute. He held that the statute points out a way for forfeiting the right by an action in the name of the people. He, however, held that the parties were entitled to put in proof if they desired. This course was pursued, testimony was taken as to the condition of the road from the beginning, which is very conflicting, and the failure to make reports to the auditor general. Upon the final hearing the court dismissed the bill without stating any reason. Counsel for the defendant states in his brief the reason to be that complainant did not come into court with clean hands, in that it had not complied with its charter.

GRANT, C. J. ( *after stating the facts* ). Counsel for the defendant states his contention thus:

(1) That the complainant herein lost the right to collect toll because of the proceedings on the part of the highway commissioner for forfeiting that right.

(2) That the company ceased to be a body corporate and therefore lost the right to take toll by failing to build the road as required by law within ten years from the time the company was organized.

(3) That the company lost the right to take toll by reason of their failure to make the reports required by statute to the auditor general's office.

(4) That the company being in default in the performance of the conditions of its charter was not in a position to invoke the aid of a court of equity to assist it in compelling the payment, by the public, of toll, which it only had the right to exact after compliance with its franchise.

Complainant's counsel contend that:

(1) Act No. 91, Pub. Acts 1897, is unconstitutional.

(2) Whether the road was originally constructed of sufficient depth and width cannot be tried in this action.

(3) The remedy provided by the plank-road law (section 6625, 2 Comp. Laws ) is exclusive.

1. Briefly stated the case is this: Complainant spent

$36,000 in the construction of its road, 9 miles in length. The year after its organization the circuit court for the county of Kent, in chancery, on a hearing, decided that its road was completed according to the statute, and that it was authorized to receive toll, and dissolved the preliminary injunction which had first been issued. The condition of the road was not thereafter questioned by the township authorities for 16 years. The unprecedented rains of 1905 greatly damaged the road. Upon the statement of a private citizen the defendant, the highway commissioner, notified complainant to make extensive repairs. It had commenced these repairs before the serving of such notice. It spent over $3,000 in this work. Sixty days after such notice, and without any notice or opportunity for a hearing, the defendant filed a certificate with the clerk of the township of Walker, and on the same day notified complainant of the filing of such certificate, that it had failed to comply with his order, that its road was abandoned, and that it must cease and refrain from that time on to exercise its franchise or obstruct the road from public travel. If this action is valid the complainant has, without a day in any court,—without even a day before the defendant himself,—been deprived of its property and its franchise forfeited. To empower a township officer, without a hearing, to declare the charter of a corporation forfeited, every right to exercise its franchise lost, and its property destroyed, is repugnant to justice and every sound principle of constitutional government.

The action of the defendant cannot be sustained. The act expressly directs, on the part of the highway commissioner, " a full and complete investigation and hearing the evidence offered by parties concerned." His determination must be based upon such examination and evidence. While the statute does not expressly provide for a notice of hearing, yet it impliedly requires one. *Miller* v. *Hoffman*, 135 Mich. 319. We there said:

" It is repugnant to sound principles of constitutional

law that one's rights shall be determined by a proceeding which does not afford him that opportunity."

The only appeal provided is from a determination made by the highway commissioner after such hearing. It was the duty of the commissioner to give reasonable notice to the complainant of the time and place of hearing, and to afford an opportunity to produce proofs. The defendant was not sworn as a witness, and there is no evidence that he even made an examination. His action is unauthorized by the statute, and the proceeding is absolutely void.

2. The act provides for an appeal from the commissioner of highways of any township, acting as toll-road commissioner, to the circuit court in chancery. Is the court in chancery an appellate court, or a court solely of original jurisdiction? If this provision of the act be held valid it results in holding that the legislature may provide for appeals to the court in chancery from the decision of every administrative or ministerial officer in the State, and also from judgments of inferior courts and tribunals. Under this contention the decisions of the commissioners of banking, of insurance, of railroads, and of a long list of commissions and boards may be made the subject of appeal to the court in chancery. It would place it in the power of the legislature to provide for appeals to courts of chancery in cases where the party has the constitutional right to trial by jury.

So far as my examination extends, this is the first attempt to constitute the court of chancery an appellate court. The question is an important one and is now presented to the courts for the first time in the history of the State. In the very nature of things, a court of equity is a court of original jurisdiction. The Constitution and the legislature have provided methods of procedure for litigants to appeal their cases at law from the lowest to the highest judicial tribunal where all questions involving their legal rights must be determined. Courts of chancery have jurisdiction only in those cases where the courts of law

cannot afford an adequate remedy.   The specific enforce-
ment of contracts, the reformation of written instruments,
the setting aside of deeds and other instruments obtained
by fraud, legal upon their face, and other cases which
will readily suggest themselves, must find their remedy
in the court of chancery.   Naturally the suit must there
originate.   The relief can be granted only by a court of
chancery.   A suit for relief cannot originate in some other
tribunal and then be appealed to that court which alone
can grant relief.   When the Constitution of 1850 was
adopted the court of chancery was in existence with only
original jurisdiction.   It was formerly presided over by a
chancellor.   The office of chancellor was abolished by
chapter 90 of the Revised Statutes of 1846.   It was recog-
nized as a separate court or at least as a separate division
of the circuit court.   By section 1 of that chapter the sev-
eral circuit courts were made courts of chancery, and the
powers thereof were to be exercised by the circuit judges,
and "the name and style of such courts sitting in chan-
cery shall be, 'the circuit court for the county of ———,
in chancery.'"

This chapter left the chancery jurisdiction as distinct
from that of the circuit court at law as though they had
been organized as two separate and distinct courts.
While it is true that the term "court of chancery" is not
mentioned in the Constitution, yet the existence of that
court is clearly recognized.   Section 5 of article 6 prohib-
its the office of master in chancery.   It requires the legis-
lature so far as practicable to abolish distinctions between
law and equity proceedings.   The Constitution does not
require the legislature to abolish distinctions between law
and equity courts, but only between the proceedings in
the two.   The framers of the Constitution not only rec-
ognized the existence of the court of chancery as above
shown, but they also provided by section 1 of the schedule
that—

"The common law and the statute laws now in force,
not repugnant to this Constitution, shall remain in force

until they expire by their own limitations, or are altered or repealed by the legislature."

The laws providing for the court in chancery, in force at the time of the adoption of the Constitution, were not of the class expiring by their own limitation; on the contrary, they were recognized as in force, and the court of chancery as existing, and those laws have ever since been recognized by the legislature and the courts as in force and as continuing the court in chancery with the jurisdiction entirely distinct from that of a court of law.

Nearly every legislature since the adoption of the Constitution has recognized the existence of the circuit court in chancery and its exclusive jurisdiction by enacting laws governing its procedures, and providing for enforcing equitable rights. It is immaterial, in my opinion, whether we say that under the Constitution the court of chancery is a part of the circuit court. If included in the term "circuit court" it is a distinct part of that court with a distinct and separate jurisdiction. This evidently is the construction which the legislature for 50 years placed upon it, and is a practical construction which is binding upon the courts. This question is, however, in my judgment, put at rest by the decision of this court in *Brown* v. *Kalamazoo Circuit Judge*, 75 Mich. 274 (5 L. R. A. 226), decided in 1889,—39 years after the adoption of the Constitution. The legislature there attempted to abolish the distinction between law and chancery courts by providing for a jury to try issues of fact in the chancery court and by making their decision final and binding upon the conscience of the judge. It was there held that the chancery system was retained with the powers and jurisdiction that it formerly possessed. Justice CAMPBELL, speaking for the court, said:

"The universally recognized basis of equitable jurisprudence, found in statutes and constitutions, as well as in the reports and text-writers, is the inadequacy of the common law to deal with these subjects. A principal basis of that inadequacy was the nature of the tribunal passing

on the facts.    In common-law issues fact and law can be readily separated; but in the great majority of equity proceedings it is impossible to make any such separation. The functions of judges in equity cases in dealing with them is as well settled a part of the judicial power, and as necessary to its administration, as the functions of juries in common-law cases.    Our constitutions are framed to protect all rights.    When they vest judicial power they do so in accordance with all of its essentials, and when they vest it in any court they vest it as efficient for the protection of rights, and not subject to be distorted or made inadequate.    The right to have equity controversies dealt with by equitable methods is as sacred as the right of trial by jury."

Either the chancery court was abolished by the Constitution of 1850 (which no one claims), or else it was preserved with all the powers and jurisdiction it formerly possessed.    It formerly possessed no appellate jurisdiction, but only original jurisdiction.    It was continued as the same court.    The case of *Brown* v. *Kalamazoo Circuit Judge*, supra, in my opinion, is conclusive, and we can only maintain the right to originate equity suits and as well suits at law in other tribunals, and to appeal them to the circuit court in chancery by overruling that decision.    It is a clear encroachment upon the power and jurisdiction of the chancery courts as they then existed and as they have since continued.    I see no escape from the conclusion that the act is unconstitutional for this reason. The act, therefore, provides for no appeal from the arbitrary decison of the commissioner to a court having appellate jurisdiction to try the issue.    We cannot presume that the legislature would have lodged the extraordinary power in a single individual to forfeit the franchises and property of its citizens, without providing for a judicial investigation and determination.    The defendant is not a judicial officer, and, under our Constitution, the exercise of judicial power cannot be conferred upon him.    We must, therefore, hold the entire act void.

3. The learned counsel for the defendant, however, urges that the complainant has not applied to the court of

equity with clean hands, and that the court below denied relief for that reason, although it does not so appear by the record. The claims relied upon to show uncleanliness, which bars admission to the court of equity, are (1) that the complainant failed for some years to file its annual reports with the auditor general; (2) that it did not complete its road within the three years required by the statute; (3) that it has failed to keep its road in proper repair. In other words, the contention is, that the defendant by an illegal and arbitrary act has assumed to deprive the complainant of all its property and property rights; has used and threatens to use violence to consummate his illegal act, and now says to complainant, "You cannot have your day in court, because you have not acted in compliance with your charter."

Two courses were open to the complainant: (1) To meet force with force in protecting its property. (2) To resort to the court to restrain the unlawful acts of the defendant and protect its property. It properly chose the peaceful and orderly one,—and now the defendant, in this collateral proceeding, seeks in this manner to obtain a determination of the very questions which the authorities universally hold can only be accomplished by the judgment of a court.

The existence of a corporation and the forfeiture of its franchise cannot thus be determined in a collateral proceeding, especially where it was duly organized, has existed and enjoyed its property for nearly 17 years without question, and has been adjudged by a court of competent jurisdiction to have originally constructed its road as required by law. Several attempts have been made to question the rights of corporations in collateral proceedings. *Canal Street Gravel-Road Co* v. *Paas,* 95 Mich. 372, where a traveler, claiming that the bad condition of the road had forfeited the right of the company, forcibly passed its toll gate. We there said:

"The franchises of a corporation cannot be declared forfeited in such a proceeding."

In *Montgomery* v. *Merrill*, 18 Mich. 338, it was said:

"It would be contrary to legal principles to leave the question [forfeiture of a corporate franchise] open to be determined collaterally."

In *Toledo, etc., R. Co.* v. *Johnson*, 49 Mich. 148, it is said:

"Whether a railroad corporation has finished its road and put it in full operation, cannot always be a matter beyond dispute. Material questions of fact might well arise which would have to be submitted to the consideration of a jury. The result must be that while in one case the jury might find the road to have been finished and in full operation, in another like case a different jury might come to a very different conclusion. So, if no one interfering, the company should, after the period fixed, proceed with the construction of its road, could third parties harass and annoy the company by tearing up, obstructing or destroying its track or roadbed? And if such acts were done or threatened would the company be powerless to protect itself or its property by seeking redress in the courts? The law wisely seeks to avoid all such questions by declaring that they shall not be raised collaterally, but only in a direct proceeding instituted for such purpose. *Montgomery* v. *Merrill*, 18 Mich. 343; Cooley on Constitutional Limitations, pp. 253, 254."

The State only in a proper proceeding can question the validity of an incorporation. *Detroit, etc., R. Co.* v. *Campbell*, 140 Mich. 384. See, also, *Traverse City, etc., R. Co.* v. *Seymour*, 81 Mich. 378.

Parties desiring to attack corporations on the ground of forfeiture must do so by a proper proceeding involving a judicial inquiry. They cannot proceed illegally and by force, and, when the corporation seeks the restraint of such illegal action, be heard to say: "I will show to the court that you have not complied with your charter, and therefore you cannot interfere with my illegal and violent acts."

The conclusion reached renders it unnecessary to discuss the other important questions presented.

Since writing the above opinion my Brother MONTGOMERY has written one holding the act unconstitutional on other grounds. I fully concur with him that the act is also unconstitutional for the reasons stated by him.

Judgment reversed, and decree entered for the complainant, with costs of both courts.

BLAIR, J., concurred in the result reached by GRANT, C. J.

MONTGOMERY, J. I agree with my Brother GRANT that Act No. 91 of the Public Acts of 1897 must be held unconstitutional, but I put my concurrence upon other ground than that adopted by him in his opinion. I am not prepared to hold that in a proper case the legislature may not confer upon the circuit court, in chancery, appellate jurisdiction.

By section 1 of article 6 of the Constitution, the judicial power is vested in one Supreme Court, in circuit courts, in probate courts, and in justices of the peace. By section 8 of the same article, it is provided that the circuit court shall have original jurisdiction in all matters civil and criminal not excepted in the Constitution and not prohibited by law, and appellate jurisdiction from all inferior courts and tribunals and a supervisory control of the same. Section 5 provides that the legislature shall as far as practicable abolish distinctions between law and equity proceedings. Under this Constitution legislation has been adopted which constitutes the circuit judge the chancellor, and the court over which he presides is called the circuit court in chancery. Any proceeding which might properly be originally launched in that court may be appealed there, if the legislature so directs, without doing violence to any constitutional provisions. If we say that the circuit court in chancery does not fall within the term "circuit court," it follows that there can be no circuit court in chancery, for under the Constitution the whole judicial power is vested in the Supreme Court, in circuit courts, probate courts, and justices of the peace, and the

chancery court is not named at all. I by no means intimate that a class of cases might not be named in which an appeal to the circuit court in chancery would be prohibited by other considerations, for instance, a class of cases in which a trial by jury is given to the parties by the Constitution. But although this statute is not in my judgment unconstitutional for the reason stated, I think it does violate section 1 of article 6, above quoted, in that it is an attempt to vest judicial power in the toll-road commissioners, so-called.

It is unnecessary to set forth the provisions at length, as they appear in the opinion of Chief Justice GRANT. The provisions which are essential to be considered are that the toll-road commissioner may require the company to repair and put the road in proper condition within a stated time, and that in default thereof the commissioner shall immediately make a certificate of such fact, and file the same with the township clerk of his township, and such toll road shall be considered abandoned, and all such toll-road companies shall cease to take toll for traveling thereon after such abandonment, and no person shall be required to pay toll for traveling thereon after such abandonment, and that after filing said certificate said toll-road commissioner shall notify any such toll-road company in writing of the filing thereof, and such company shall have no right thereafter to obstruct said road or prevent persons from passing over the same, or any part thereof, and it shall be the duty of the toll-road commissioner to prevent such obstructions, or to remove them if placed in said roads as provided in any other of the highways in his township; and further, it is provided whenever any toll-road commissioner, after a full and complete investigation and hearing the evidence offered by parties concerned, shall *determine* that the said toll road in question is not maintained in accordance with the conditions and provisions of its charter, said toll road or toll-road companies may within 20 days after such finding appeal,

as in other cases provided, from the decision of said commissioner to the circuit court in chancery of the same county; but the *orders* of said commissioner *shall be* and *remain* in *full force* and *effect until revoked* by the *order* of said court.

This is an attempt to give to the order of the toll-road commissioner the force and effect of a judgment unless an appeal shall be taken therefrom. This is plainly the exercise of judicial power. *People, ex rel. Kern,* v. *Chase,* 165 Ill. 527 (36 L. R. A. 105); *State* v. *Guilbert,* 38 L. R. A. 519 (56 Ohio St. 575); *Underwood* v. *McDuffee,* 15 Mich. 361. That before a forfeiture of the franchise of the complainant can be worked there must be a judicial finding was determined in *City of Detroit* v. *Plank-Road Co.,* 43 Mich. 140. See, also, *Flint & Fenton-ville Plank-Road Co.* v. *Woodhull,* 25 Mich. 99, where it was said:

"The question whether a corporation has violated its charter is judicial in its nature.   *   *   *   The violation of the charter cannot be legally made to appear, except on a trial in a tribunal whose course of proceeding is devised for the determination of questions of this nature."

It is urged that the exercise of power by the toll-road commissioner is the exercise of the visitorial power of the State, and that it is not necessary that the corporation shall be given notice since the company accepts its right to do business subject to the authority of the State and under such conditions as the sovereign might see fit to impose, and consequently that the legislature may revoke the license of an insurance company, for instance, without a hearing, and that the exercise of such power is not judicial in a sense. Reference is made to the case of *Hartford Fire-Ins. Co.* v. *Raymond,* 70 Mich. 485.

We think there has been a failure to distinguish between the withdrawing of authority from a corporation to do business in the State and the invasion of the sub-

stantial property rights of the corporation.   That distinction is sufficiently noted in *City of Detroit* v. *Plank-Road Co.,* supra.

Upon the propositions not herein discussed I concur with Chief Justice GRANT.

CARPENTER and MCALVAY, JJ., concurred with MONTGOMERY, J.