# STATE OF MICHIGAN

# COURT OF APPEALS

---

ROBERT ROY and TINA ROY,

        Plaintiffs/Counter-Defendants-
        Appellees/Cross-Appellants,

v

ISLAND & FONDA LAKES ASSOCIATION,

        Defendant/Counter-Plaintiff-
        Appellant/Cross-Appellee,

and

BURCHFIELD PARK & POLLESCH PC, SHARI
L POLLESCH, and HOWARD HARRINGTON,

        Defendants/Counter-Plaintiffs.

UNPUBLISHED
November 4, 2014

No. 315124
Livingston Circuit Court
LC No. 11-026340-CH

---

Before: FITZGERALD, P.J., and GLEICHER and RONAYNE KRAUSE, JJ.

PER CURIAM.

This matter arises out of a road assessment imposed by defendant Island & Fonda Lakes Association (IFLA) on property owned by Robert and Tina Roy (Roy) in a subdivision within IFLA's geographic boundaries. IFLA is a "summer resort corporation" that, among other things, maintains the private roads in several nearby subdivisions in a collective manner. Roy owned Lot 2 in one of those subdivisions for approximately ten years before purchasing an adjacent parcel, Lot 3. Unfortunately, the 2010-2011 dues assessment for Lot 3 was sent to the seller, as were the subsequent late notices. IFLA eventually filed a lien against Lot 3, whereupon Roy undertook to sue IFLA pursuant to a variety of legal theories. IFLA counterclaimed on the lien. The trial court granted summary disposition in favor of IFLA as to most of the many counts in Roy's complaint but held that the dues IFLA imposed that resulted in the subject assessment had been *ultra vires*, so it ordered the assessment and its resulting lien void and granted summary disposition in favor of Roy as to IFLA's counter-complaint. IFLA appeals and Roy cross-appeals. We affirm in part, reverse in part, and remand.

IFLA is a nonprofit corporation created in 1942 for the stated purpose of being "[f]or the upkeep of sanitation and improvement of roads, collecting of garbage" as a "summer resort

-1-

corporation" pursuant to 1929 PA 137, as amended, MCL 455.201 *et seq*. The original term of IFLA's existence was 30 years. In 1972, IFLA, still under its original name, filed a Certificate of Extension of Corporate Term, which stated that at a meeting of 22 members, at least 4/5 had voted to extend the corporate term into perpetuity. In 1993 and 1994, IFLA changed its name to its current name and amended its articles of incorporation to state that its purpose was "for organized maintenance and improvement of common roads and parks and to promote changes which affect the health and welfare of all property owners and residents of the area." IFLA has promulgated various iterations of bylaws over the years.

Roy purchased Lot 2 on July 26, 2001 and paid all IFLA dues assessed against Lot 2 since that time. Roy was at the time living in Milford and treated the house on Lot 2 as a summer cottage. On April 27, 2008, at its annual meeting, IFLA first imposed dues assessments on vacant lots, in the amount of $75.00 a year, by a supermajority vote of 16 members to 3 members. On April 26, 2009, at its annual meeting, IFLA approved a motion, by a unanimous vote of 28 members to 0, to increase the dues for five years from $165.00 a year to $200.00 a year for resident lots and from $75.00 a year to $100.00 a year for vacant lots for the purpose of paying for a drain project. As will be discussed, Roy contends that IFLA did so impermissibly. IFLA's dues periods run from July 1 to June 30 of the following year, with fees being added to delinquent dues after September 1.

On July 1, 2010, Lot 3 in Ewart's Subdivision was owned by Judith McGowan. McGowan did not pay the 2010-2011 IFLA dues assessment. Roy purchased Lot 3 on September 8, 2010. That deed was duly recorded on September 15, 2010. At the time the deed was recorded, the 2010-2011 dues for Lot 3 were delinquent, but IFLA had yet to record any lien on the property. Roy did not inform IFLA of the purchase of Lot 3. The possibility of dues remaining owing on Lot 3 was discussed at the closing; Robert Roy testified that he was aware that dues might be owing and he was willing to pay them, but ultimately Roy relied on the results of a title search that found no liens. IFLA did not otherwise become immediately aware of the transfer; consequently, the late notices it sent regarding the dues for Lot 3 went to McGowan.

On March 30, 2011, IFLA recorded a lien against Lot 3 for the delinquent dues and additional fees and costs, which had risen by then to $408.21. By that time, IFLA had discovered the property transfer; it served Roy with notice of the lien on April 5, 2011. Roy and IFLA attempted some kind of negotiation, but Roy ultimately refused to pay more than the actual amount of the original dues themselves. The instant litigation followed, Roy asserting eleven counts against IFLA ranging from quiet title to declaratory relief seeking to invalidate IFLA, and IFLA counterclaiming to foreclose on the lien and asserting abuse of process. The trial court entered a very thorough opinion in which it dismissed most of Roy's claims, but it found the 2010-2011 dues assessment invalid because IFLA's voting process pursuant to its bylaws violated MCL 455.219, so it dismissed IFLA's claims as well. This appeal followed.

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "When reviewing a grant of equitable relief, an appellate court will set aside a trial court's factual findings only if they are clearly erroneous, but whether equitable relief is proper under those facts is a question of law that an appellate court reviews de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747

NW2d 811 (2008). This Court reviews de novo questions of statutory construction, with the fundamental goal of giving effect to the intent of the Legislature. *Weakland v Toledo Engineering Co, Inc*, 467 Mich 344, 347; 656 NW2d 175, amended on other grounds 468 Mich 1216 (2003).

As an initial matter, Roy challenges IFLA's act of incorporation and its subsequent acts of extending its corporate existence, the former of which is so grossly impermissible as to border on frivolity, and the latter of which appears to be based on a misapprehension of Michigan's constitution. Pursuant to MCL 450.1221, filing of articles of incorporation presumptively creates a corporation and constitutes "conclusive evidence that all conditions precedent required to be performed under this act have been fulfilled and that the corporation has been formed under this act, except in an action or special proceeding by the attorney general." MCL 450.1221 is part of the business corporation act, MCL 450.1101 *et seq*, and explicitly refers to prerequisites "under this act." However, under MCL 450.1123(1), the business corporation act applies to summer resort corporations. IFLA was incorporated as a summer resort association pursuant to MCL 455.201 *et seq*. Additionally, MCL 450.1221 "codifies Michigan's longstanding common-law practice of only permitting the state to challenge corporate status, and to do so only in a direct proceeding on that issue." *Miller v Allstate Ins Co*, 481 Mich 601, 615; 751 NW2d 463 (2008).

Indeed, Michigan courts have long held it to be the rule for corporations generally that the incorporation of a corporation may only be challenged by the state, and then only in a direct proceeding to do so. See *Bridge Street & Allendale Gravel Road Co v Hogadone*, 150 Mich 638, 651, 654; 114 NW 917 (1908); *Detroit & TSLR Co v Campbell*, 140 Mich 384, 394; 103 NW 856 (1905); *Toledo & AAR Co v Johnson*, 55 Mich 456, 460; 21 NW 888 (1885); *Swarthout v Michigan Air Line R Co*, 24 Mich 389, 394-396 (1872); *Cahill v Kalamazoo Mut Ins Co*, 2 Doug 124, 141 (1845); see also *Smith v Sheeley*, 79 US (12 Wall) 358, 361; 20 L Ed 430 (1870). The rule may not be a totally inflexible one where a challenge is made against a particular franchise granted to a corporation after it has come into existence. *Grand Rapids Bridge Co v Prange*, 35 Mich 400, 404-405 (1877). However, no such challenge is brought here. Roy's private suit to invalidate IFLA's existence, either at all or as a valid summer resort corporation, is utterly untenable and, as noted, borders on frivolity.

Additionally, the trial court correctly recognized that under Const 1908, Art XII, § 3, corporate terms were limited to at most 30 years and could only be extended by 30 years at a time "on the consent of not less than 2/3 of the capital stock of the corporation." However, Const 1963 eliminated that restriction, and pursuant to MCL 450.371, corporate terms may now be perpetual. See *Hogg v Four Lakes Ass'n, Inc*, ___ Mich App ___, ___; ___ NW2d ___ (2014) (Docket No. 316898, slip op at pp 3-5). The amendment to IFLA's articles of incorporation state that 4/5 of its members approved the extension, which was proper pursuant to the then-applicable MCL 450.62 and, as the trial court noted, the present MCL 455.251.

Consequently, Roy's argument that IFLA's corporate existence was not properly extended must also fail.[1]

The roads in the subdivisions that form IFLA are all private, and no municipality or other public entity maintains them or has any other responsibility for them. Indeed, the plat maps of the subdivisions all state that the roads are dedicated for the use of the lot owners only. Roy lives in Ewart's Subdivision, one of those member subdivisions. The trial court found that "[s]ince approximately 1924, through the predecessor of [IFLA], the homeowners within the three developments [subdivisions] have collectively maintained the roads and other common property." We have not found any specific documentary evidence explicitly so stating, but Roy does not deny that finding, and that finding is an essentially mandatory inference from the 1920 to 1937 dates of the subdivision plats.

Second, it is not clear that Roy has even articulated a valid cause of action under the Summer Resort Corporation Act. There are some case opinions that imprecisely infer that declaratory judgment is a cause of action. See *Adair v State*, 486 Mich 468, 490; 785 NW2d 119 (2010) ("[a]n action for a declaratory judgment is typically equitable in nature and subject to different rules than other causes of action.") However, declaratory judgment is in fact a *remedy*, so it is technically improper to plead it as a cause of action. *Wiggins v City of Burton*, 291 Mich App 532, 561; 805 NW2d 517 (2011). However, "[i]t is well settled that the gravamen of an action is determined by reading the complaint as a whole, and by looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams (On Reconsideration)*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). Doing so in this case is exceptionally difficult due to the nature of the Roy's arguments.

We choose to give Roy the benefit of the doubt. Under MCL 450.1489(1), shareholders "may bring an action in the circuit court of the county in which the principal place of business or registered office of the corporation is located to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder." The court may then grant relief up to and including cancellation of an act of the corporation or dissolution of the corporation. *Id*. Roy owns property within IFLA's boundaries, so Roy is an IFLA shareholder. Under MCL 450.1489(1), "oppressed" shareholders abused by "controlling" persons within "closely held corporations" may have a direct cause of action. The limitation to "closely held corporations" appears to be a reference to MCL 450.1489(2), which precludes shareholders "whose shares are listed on a national securities exchange or regularly traded market maintained by 1 or more members of a national or affiliated securities association." The "shares" at issue here certainly are not, and we find no obvious other reason why MCL 450.1489(1) is not available to Roy through MCL 450.1123(1).

---

[1] We therefore need not consider whether the trial court properly applied the doctrine of laches to these arguments. Nevertheless, as we discuss *infra*, we conclude that the trial court's application of the doctrine of laches was proper and appropriate, so we would affirm the trial court's resolution of these arguments even if they were cognizable.

With few exceptions not applicable here, "where a new right is created or a new duty is imposed by statute, the remedy provided for enforcement of that right by the statute for its violation and nonperformance is exclusive." *Pompey v General Motors Corp*, 385 Mich 537, 552; 189 NW2d 243 (1971). It appears that Roy's exclusive avenue for relief from the alleged infirmities in IFLA's voting procedures is therefore essentially a shareholder oppression suit. Roy has not expressly asserted anything of the sort, but Roy's somewhat confusing arguments to the effect that IFLA is acting illegally, unfairly, and oppressively could, when we look past the labels and especially in light of IFLA's alleged violation of its own bylaws and prohibition against proxy voting, at least arguably constitute "willfully unfair and oppressive conduct" as defined in MCL 450.1489(3).[2] We therefore extend to Roy the benefit of the doubt whether a cognizable claim has been made out.

Roy challenges the trial court's application of the doctrine of laches to Roy's attempt to invalidate IFLA's votes and dues assessment. The equitable doctrine of laches "is applicable in cases in which there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Public Health Dep't v Rivergate Manor*, 452 Mich 495, 507; 550 NW2d 515 (1996); see also *Regents of Univ of Mich v State Farm Mut Ins Co*, 250 Mich App 719, 734; 650 NW2d 129 (2002). Critically, it is the prejudice caused by some delay that primarily affects whether laches is appropriate. *Lothian v City of Detroit*, 414 Mich 160, 168; 324 NW2d 9 (1982). We find the trial court's application of the doctrine appropriate; indeed, the trial court should have applied it further.

Initially, however, Roy apparently seeks to invalidate *all* votes *ever* taken by IFLA and *all* dues assessments *ever* made by IFLA. To the extent Roy challenges any such votes or assessments that occurred before Roy purchased Lot 2, we believe that Roy lacks standing. Dues assessed against and paid by predecessors in interest simply could not possibly have invaded any special substantial interest Roy might have. See *Lansing Schools Educ Ass'n v Lansing Bd of Ed*, 487 Mich 349, 378; 792 NW2d 686 (2010). Likewise, it is difficult to guess at how any votes taken prior to Roy's purchase of Lot 2 could have affected any of their interests, other than possibly the adoption of the presently-effective bylaws.

Roy's arguments against the application of laches are essentially that they did not sit on their rights after they discovered that they had any such rights to assert, and IFLA did not come to court with the requisite "clean hands" necessary to enjoy the benefits of equity. Regarding the latter argument, however, all of the asserted wrongful acts committed by IFLA are the acts to which IFLA seeks to apply the equitable defense of laches (e.g., disregarding statutory and

---

[2] Therein defined as "a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the shareholder as a shareholder. Willfully unfair and oppressive conduct may include the termination of employment or limitations on employment benefits to the extent that the actions interfere with distributions or other shareholder interests disproportionately as to the affected shareholder. The term does not include conduct or actions that are permitted by an agreement, the articles of incorporation, the bylaws, or a consistently applied written corporate policy or procedure."

bylaw voting requirements), making this effectively a bootstrapping argument. There appears to be no dispute that Roy acted promptly to challenge IFLA's actions when IFLA imposed a lien against them, and in the process, Roy discovered that IFLA's corporate existence and corporate acts might be fatally defective by law. However, there is also no dispute that Roy paid lot assessments for ten years previously, during which time a potentially material witness for some of Roy's claims died and IFLA expended funds and entered into contracts with the expectation that its dues assessments were valid.

The record discloses no clear error in the trial court's factual finding that "the Roys have lived within the bounds of IFLA for over a decade without raising any issue or looking to enforce any rights regarding formation, governance, or authority[; and i]n the meantime, by waiting until now to challenge the formation, the IFLA has suffered prejudice by virtue of the death of their historical record keeper, Carol Setsuda, as well as the fact that it has entered into a contract with and accepted an advance from Green Oak Township for drainage repair . . . under the assumption that it was validly formed[.]" Setsuda passed away "in late 2004 or early 2005," although other members with historical knowledge had also passed away. It is not immediately clear when IFLA entered into the agreement with Green Oak Township, but the Township at least tentatively approved doing so on April 15, 2009, and IFLA voted to approve a dues increase "for the purpose of completing Phase II of the Island and Fonda Lake Drain" at its 2009 meeting. The loss of institutional history would have little bearing on events that occurred more recently, but entering into substantial debt constitutes a substantial act of reliance.

We add that Roy paid their assessed dues for the entire decade and, as IFLA points out, enjoyed the benefits of the road maintenance conducted by IFLA, so they were not unaffected by IFLA's existence or IFLA's dues assessments. IFLA's assertion that paying dues should be considered an act of corporate assent may be going too far, given the undisputed fact that Roy never had any active participation in IFLA's business. Nonetheless, Roy had ample basis for challenging IFLA's existence or conduct as soon as they paid their first dues. Consequently, the case at bar is not one in which plaintiffs acted promptly upon being inconvenienced, but rather one in which plaintiffs did nothing for a long time until they were inconvenienced *more*. The trial court did not commit clear error in finding that Roy sat on their rights for a decade and that IFLA changed its position to its detriment and otherwise suffered prejudice as a result. The trial court likewise did not commit clear error in finding, as a result, "passage of time, prejudice to the defendant, and a lack of diligence by the plaintiff." The prerequisites for the application of laches are therefore satisfied, at least through the time when IFLA entered into the debt-incurring drain agreement with Green Oak Township. The trial court correctly precluded Roy from challenging any of IFLA's conduct prior to that time.

By necessary inference, of course, the doctrine of laches is inapplicable to any of IFLA's conduct *after* its act of reliance, as the trial court properly found. However, the trial court clearly committed a significant factual error in declining to apply the doctrine of laches to the 2010-2011 dues assessment: the trial court repeatedly referred to "the April 2010" vote, but no such vote was ever mentioned by the parties. The challenged dues assessment that resulted in the lien that precipitated the instant suit was imposed at the *2009* meeting; the same meeting at which IFLA entered into the debt-incurring drain agreement with Green Oak Township. The trial court erroneously stated that Roy brought suit "approximately one and one half years after the vote on the 2010-2011 year dues assessment and approximately 7 months after the lien was recorded."

-6-

The latter timing is accurate, but Roy filed their initial complaint on October 24, 2011, approximately *two* and a half years after the vote on the 2010-2011 dues assessment. IFLA argues that Roy's acquisition of Lot 3 should not "eras[e] the previous decade of delay." Although somewhat hyperbolic, IFLA makes a valid point that by the time Roy did assert their rights, the damage had already been done. As discussed, Roy was well aware of the fact that IFLA had been imposing dues, and they challenge the fact that IFLA imposes them rather than just the increase or just the imposition of dues on vacant lots.

Consequently, the trial court properly applied the doctrine of laches, but it erroneously did not extend the application of the doctrine of laches to the 2010-2011 dues assessment.

Nevertheless, the doctrine of laches does not *completely* bar Roy's complaint. In particular, Roy's challenges to IFLA's bylaws as they presently exist present no potential laches issue. The trial court found various infirmities in IFLA's bylaws. We agree in part with the trial court, but we also disagree in part.

IFLA contends that the trial court erred in finding that its voting procedures violated various provisions of the summer resort corporation act by impermissibly permitting votes by fewer than all members. IFLA points out that its 1993 bylaws expressly permit less stringent voting requirements, and furthermore, MCL 455.219 was amended in 2006 to permit votes to be had by a majority of the members voting, rather than by all members. Specifically, MCL 455.219(2) provides:

> Unless the members by a vote of a majority of all of the members have by resolution specifically provided for approval by a majority of the votes cast by the members voting, the vote of a majority of all of the members of the corporation is required to approve an action of the board under subsection (1).

"Resolution" is not defined by statute, but has been defined by this Court as "a formal expression of the opinion or will of an official body, adopted by a vote," noting that a motion that has received a vote of approval becomes a resolution. *Gorney v City of Madison Heights*, 211 Mich App 265, 271; 535 NW2d 263 (1995). If an organization adopted bylaws by a vote, the resulting adopted bylaws would constitute a "resolution." Under MCL 455.219(2), the requisite resolution must specifically provide for voting by less than all members, but the statute does not require the resolution to be specifically and exclusively do to so. Consequently, there is no reason why the requirements of MCL 455.219(2) could not be satisfied by a corporation adopting bylaws that provide for votes by less than all members.

The trial court found no evidence that any such resolution had ever been made. We disagree. IFLA's *original* bylaws were adopted effectively contemporaneously with the formation of IFLA itself. The articles of incorporation list five incorporators and make no mention of membership. IFLA in its original form must have consisted of only the incorporators, and although membership *eligibility* is defined by MCL 455.206, the actual scope of IFLA's final membership was not otherwise defined *until* the bylaws were adopted. Because it is inconceivable that the original bylaws would not have been adopted by all five incorporators, we find that those original bylaws constitute a resolution voted on by what was at the time the entire membership of IFLA. The 2006 amendment to MCL 455.219 refers to a

corporation having provided for voting by less than all members in the past, so there is no reason why MCL 455.219(2) could not, as IFLA argues, "ratify" an appropriate resolution that had occurred prior to that amendment.

We therefore conclude that the trial court erred in holding that IFLA's bylaws impermissibly permit votes by fewer than all members.

In contrast, IFLA concedes that MCL 450.1421, which allows shareholders to vote by proxy, is applicable to summer resort corporations pursuant to MCL 450.1123(1). Pursuant to MCL 450.1231, bylaws may not contain provisions "inconsistent with law." Consequently, IFLA does not challenge the trial court's ruling that its prohibitions in its bylaws against proxy voting or voting by delinquent members is unenforceable. However, IFLA points out that Roy never attempted to vote by proxy and were not delinquent at any relevant time. That fact does not deprive Roy of standing, which requires only that a plaintiff have some "special injury or right or substantial interest that would be detrimentally affected in a manner different from the citizenry at large." *Lansing Schools Educ Ass'n*, 487 Mich at 359. Nevertheless, the remedies available to the Court under MCL 450.1489(1) are permissive and entirely at the Court's discretion, rather than mandatory. The imposition of the lien was essentially a purely ministerial act that was all but mandated by prior events that Roy may not now challenge. In light of the fact that Roy never sought to vote by proxy, we conclude that Roy was not harmed by that particular deficiency in IFLA's procedures and therefore not entitled to relief beyond a prospective declaratory judgment.

We conclude that the trial court properly found that IFLA's bylaws illegally prohibit proxy voting, but we also conclude that the trial court erroneously invalidated the lien on that basis.

Roy next argues that irrespective of whether IFLA properly exercised any of its powers, summer resort corporations' powers are enumerated in MCL 455.212, and that statute does not explicitly confer authority to maintain roads that the corporation does not own outright or to assess dues for that purpose. Roy's reading of the statute is technically accurate if given the most constricted reading possible. However, as the trial court found, such powers on the part of summer resort corporations are necessarily implied by the entirety of the statutory scheme.

Strictly speaking, MCL 455.212 states that a summer resort corporation board of trustees has "the following jurisdiction over the lands owned by the corporation and its members, viz.: To keep all such lands in good sanitary condition; . . . to regulate the speed of vehicles over its streets and alleys and make general traffic regulations thereon; . . . to compel persons occupying any part of said lands to keep the same in good sanitary condition and the abutting streets and highways and sidewalks free from dirt and obstruction and in good repair." However, it is obvious that MCL 455.212 gives summer resort corporations jurisdiction over *lands owned by its members* and to *keep such lands in good sanitary condition*. Roads owned by the members would necessarily be included under that jurisdiction.

Additionally, MCL 455.211 provides that:

> Such corporation, through its properly delegated officers, shall have jurisdiction over the lands owned by the corporation and over the lands owned by the members of said corporation for the exercise of the police powers herein conferred. The corporation shall have jurisdiction over the streets and highways passing through or over such lands: Provided always, That the right of the public to control, repair and use all such highways and streets as are necessary for the public travel through or across said lands, shall not be affected hereby: And provided further, That the public shall not be liable for the condition, safety or repair of such streets, alleys or highways as may be laid out and used on the authority of said corporation.

This statute reiterates that summer resort corporations have jurisdiction, including police power jurisdiction, over lands owned by members, not just lands directly owned by the corporation itself. Such corporations explicitly have jurisdiction over streets and highways; not to the exclusion of the public, but by necessary implication from the last sentence, the corporation is obligated to maintain those streets and highways. Furthermore, MCL 455.204 explicitly provides that summer resort corporations "shall become and be a body politic and corporate . . . and shall have and possess all the general powers and privileges and be subject to all the liabilities of a municipal corporation and become the local governing body." MCL 455.204. Finally, such corporations may compel the payment of dues and assessments "for any purpose authorized under this act." MCL 455.219(1).

It is unambiguous from reading the statutes within the summer resort owners act together that summer resort corporations are effectively municipalities with police powers over roadways within their boundaries and the power to maintain those roads and compel the payment of dues for the purpose of maintaining those roads. The trial court correctly found that summer resort corporations do not exceed their statutory powers by assessing dues for the purpose of road maintenance.

Roy next argues that IFLA's lien cannot take priority over Roy's deed and that the lien slanders Roy's title to the property. We disagree.

Roy relies on MCL 565.29, which provides in relevant part:

> Every conveyance of real estate within the state hereafter made, which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded.

Roy argues that because they recorded their deed first, and they had no notice of any potentially conflicting interest in the property, their deed necessarily takes priority over IFLA's subsequently-recorded lien. However, logically, their approach would mean *no document* could *ever* take priority over *any* deed.

"Under MCL 565.29, the holder of a real estate interest who first records his or her interest generally has priority over subsequent purchasers." *Richards v Tibaldi*, 272 Mich App 522, 539; 726 NW2d 770 (2006). The purpose of the recording statute "is to prevent fraud by

securing certainty and publicity in such dealings." *Atwood v Bearss*, 47 Mich 72, 73; 10 NW 112 (1881). Pursuant to MCL 565.35, a "conveyance" includes, in relevant part, "every instrument in writing, by which any estate or interest in real estate is created, aliened, mortgaged or assigned; or by which the title to any real estate may be affected in law or equity." Consequently, both a deed and a lien could be "conveyances," because both are written instruments that may legally or equitably affect title to real estate, either directly or indirectly. However, pursuant to MCL 565.34, "purchaser" means "every person to whom any estate or interest in real estate, shall be conveyed for a valuable consideration, and also every assignee of a mortgage, or lease or other conditional estate." A lien simply does not fit this definition.

An encumbrance has been defined broadly in Michigan as "anything . . . which constitutes a burden upon the title ; a right of way, . . . a condition which may work a forfeiture of the estate, . . . a right to take off timber, . . . a right of dower, whether assigned or unassigned . . . In short, every right to, or interest in the land, to the diminution of the value of the land, but consistent with the passage of the fee by the conveyance." *Post v Campau*, 42 Mich 90, 94-95; 3 NW 272 (1879) (internal quotation omitted). This Court has clarified that the term "encumbrance" should not be defined *so* broadly as to include prospective burdens that have not yet attached to the property. See *Burcher v Burton Abstract Title Co*, 52 Mich App 98, 101-102; 216 NW2d 434 (1974). "Hence, although an encumbrance is typically adverse to the interest of the landowner, it does not conflict with his conveyance of the land in fee. A lien is one type of encumbrance." *Darr v First Federal Savings & Loan Ass'n of Detroit*, 426 Mich 11, 20; 393 NW2d 152 (1986).

Critically, therefore, "[a] lien is not a property right in, or right to, the thing itself, but constitutes a charge or security thereon." *Aetna Casualty & Surety Co v Starkey*, 116 Mich App 640, 645; 323 NW2d 325 (1982); see also *Darr*, 426 Mich at 21. In contrast, "[a]n assignment is a transfer of the property right." *Aetna*, 116 Mich App at 645. Consequently, a lien is not itself an interest in real estate, so a lienor is not a "purchaser" within the meaning of MCL 565.34. A lien is not necessarily exchanged for value, in any event; indeed, the opposite is typically true, that value must be given to remove the lien. Indeed, recordation of "instruments of encumbrance," which explicitly includes liens, is governed by MCL 565.25. Furthermore,

> [t]he statute does not declare that the record shall be notice to subsequent purchasers, but only that unrecorded conveyances shall be void as to subsequent purchasers in good faith whose conveyances shall be first recorded; and courts have held uniformly that the effect of the recording laws was that the record of a conveyance, which is entitled to be recorded under such laws, operates as constructive notice to subsequent purchasers claiming under the same grantor, or through one who is the common source of title." [*Edwards v McKernan*, 55 Mich 520, 526; 22 NW 20 (1885).]

Notably, IFLA's lien was not a prior unrecorded document of any kind, and because an instrument of encumbrance is not perfected until recorded, MCL 565.25(1), it is not clear that a "prior unrecorded lien" is a creature that could even exist.[3]

Roy's contention that a lien can never take priority over a prior recorded deed, under the circumstances of the instant case or in any circumstance, is contrary to the law. The basis for Roy's slander of title claim, i.e., the alleged inherent invalidity of the lien, therefore also fails.

Roy finally, and bafflingly, purports to appeal certain counterclaims asserted by IFLA that the trial court, in fact, dismissed. Moreover, IFLA expressly, if conditionally,[4] concedes the trial court's dismissal of those counterclaims. Roy is not aggrieved by the trial court's decisions regarding these issues and therefore has no right to appeal them. MCR 7.203(A). Finally, IFLA argues that the trial court should have awarded it costs and attorney fees. We decline to address that issue at this time and direct that IFLA may raise it on remand.

In conclusion, IFLA is a validly incorporated summer resort corporation with the power to assess and collect dues for the maintenance of roads within its jurisdiction. The trial court properly applied the doctrine of laches to preclude Roy from challenging any of IFLA's conduct prior to IFLA's entry into the drain contract with Green Oak Township, but it erred by failing to include the 2010-2011 dues assessment under that bar. The trial court erred in finding that IFLA's bylaws impermissibly prohibit voting by fewer than all members. The trial court correctly found that IFLA's bylaws impermissibly prohibit proxy voting, but erred by invalidating IFLA's lien on that basis. Such liens can validly encumber prior recorded deeds. IFLA's lien is a valid such encumbrance.

We therefore affirm the trial court's judgment to the extent the trial court held in favor of IFLA; and except for the issues of proxy voting, costs and attorney fees, and the dismissed counterclaims IFLA concedes on appeal, we reverse to the extent the trial court held in favor of Roy. We specifically hold, *inter alia*, that IFLA's lien is valid and should not have been

---

[3] It may be of some interest that liens appear to have their own prioritization. In the absence of a statute to the contrary, "[t]he principle, says Chief Justice Marshall, is believed to be universal, that a prior lien gives a prior claim which is entitled to prior satisfaction out of the subject it binds, unless the lien be intrinsically defective or be displaced by some act of the party holding it, which shall postpone him in a court of law or equity to a subsequent claimant." *Denison v Schuler*, 47 Mich 598, 602; 11 NW 402 (1882), citing *Rankin v Scott*, 25 US (12 Wheat) 177, 179; 6 L Ed 592 (1827). Insofar as liens, unlike conveyances, seemingly cannot exist until recorded, this rule is perfectly logical and, indeed, inevitable.

[4] Specifically, IFLA states that it declines to contest the trial court's dismissal of its counterclaims only if this Court does not reverse the trial court's dismissal of Roy's attempt to invalidate IFLA's authority in general to assess and collect dues and to maintain roads.

invalidated, and IFLA's counterclaim to foreclose the lien should likewise not have been dismissed. We express no opinion as to the issue of costs and attorney fees at this time, nor do we express any opinion as to any issue that we have not explicitly discussed herein. We remand for further proceedings consistent with this opinion as the trial court may deem necessary or appropriate. We do not retain jurisdiction.

/s/ E. Thomas Fitzgerald
/s/ Elizabeth L. Gleicher
/s/ Amy Ronayne Krause